**ORDERED in the Southern District of Florida on January 17, 2025.**

**Erik P. Kimball**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

CLARITY DIAGNOSTICS, LLC and CLARITY LAB SOLUTIONS, LLC,

Debtors. /

Lead Case No. 24–18938–EPK

Chapter 11

**ORDER GRANTING SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND RELATED RELIEF**

**THIS MATTER** came before the Court in West Palm Beach, Florida on January 17, 2025 at 10:00 a.m. (the "Sale Hearing") in the above-styled chapter 11 case (the "Bankruptcy Case") upon the Debtors' Revised Motion to: (A) To Sell Substantially All Assets Free and Clear of Liens, Claims and Encumbrances; and (B) Establish Deadlines (i) for Purchaser's Designation of Executory Contracts and Unexpired Leases for Assumption and Assignment and (ii) Objections thereto (the "Sale Motion") (D.E. No. 185). The Sale Motion requests, *inter alia,* entry of an order (the "Sale Order") pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 6004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules") (a) approving the sale (the "Sale") of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances and other interests, with such sale to be consummated in accordance with the terms and conditions of the Agreement;[1](b) authorizing and approving the execution and delivery of the Agreement; (c) approving procedures and rights related to the assumption and assignment of certain executory contracts and unexpired leases; and (d) granting related relief, all as more fully described in the Sale Motion and set forth herein.

The Court (I) has considered: (a) the Sale Motion, (b) the proposed sale of the Purchased Assets[2] by the Debtors to Clarity Lab Group, LLC (the "Purchaser") pursuant to the Agreement, the sale and transfer of (i) Debtors' Cash Collateral, (ii) Debtors' Covid A/R, and (iii) any other assets to be transferred to the Lender under the Agreement ("**Lender Assets**") pursuant to the Agreement, and the other transactions contemplated thereby (collectively, the "Transactions"), (c) the evidence proffered by the Debtors and accepted into evidence at the Sale Hearing, (d) the full record in this Bankruptcy Case, and (e) the arguments and positions of all parties in interest regarding the approval of the Agreement, Sale of the Purchased Assets and the Transactions contemplated by the Agreement, and (II) finds that (a) the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest, (b) reasonable and adequate notice of the Sale Motion and the Transactions contemplated by the Agreement, this Sale Order and the Sale Hearing has been provided to all persons required to be served in accordance with the Bankruptcy Code and the Bankruptcy Rules. Therefore, after due deliberation thereon and with good and sufficient cause appearing therefor:

THE COURT FURTHER FINDS AND DETERMINES THAT:

[1] Agreement shall mean the revised Term Sheet attached to this Order as Exhibit "A."
[2] All capitalized terms shall have the same meaning as defined in the Sale Motion unless otherwise defined herein.

**Jurisdiction, Final Order, and Statutory Predicates**

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

C. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor and the Purchaser have confirmed their consent to the entry of a final order by this Court in connection with the Sale Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D. Venue is proper in this District pursuant to 28 U.S.C. § 1408.

E. The bases for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006(a), and Local Rules 2002-1 and 6004-1.

F. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and waives any stay and expressly directs entry of judgment as set forth herein.

**Retention of Jurisdiction**

G. It is necessary and appropriate for the Court to retain jurisdiction to, among other

things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including, without limitation, the related documents attached to the Agreement as exhibits, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser or to Lender, and to adjudicate, if necessary, any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the Sale or the Transactions and related documents.

**Corporate Authority; Consents and Approvals**

H. The Debtors have, to the extent necessary or applicable, (a) the full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) all corporate authority necessary to consummate the Transactions, and (c) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the Transactions. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtor to consummate the Sale, the Agreement, or the Transactions.

**Notice of Sale**

I. Actual written notice of the Sale Motion was served as applicable upon: (a) the Office of the United States Trustee; (b) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Purchased Assets; (c) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002 as of the date of the Sale Motion; (d) all counterparties to any executory contract or unexpired lease of the Debtors; and (e) all other known creditors and interest holders of the Debtor. *See* ECF Nos. 185 and 187.

J. In accordance with the provisions of this Order, the Debtors shall serve notice upon the counter-parties (the "Contract Counterparties") to each Assigned Contract

(as defined below) of the following: (a) that the Debtors intend to assume and assign to Purchaser the Assigned Contracts; and (b) of the relevant Cure Costs associated therewith.

K. The notice of the Sale Hearing provided all interested parties with timely and proper notice of the Sale and the Sale Hearing under the circumstances of these Cases.

L. Proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale, the Sale Hearing, and the Transactions, has been provided in accordance with the Bankruptcy Code sections 105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014. The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale, the Sale Hearing is or shall be required.

M. The disclosures made by the Debtors concerning the Sale Motion, the Agreement, the Sale Hearing, and the Sale were good, complete, and adequate.

N. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein, has been afforded to all interested persons and entities, including the Notice Parties.

**Good Faith of Purchaser**

O. As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their advisors marketed the Purchased Assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount and form of the Purchase Price, which is found to constitute reasonably equivalent and fair value.

P. Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31). No officer, director, manager, or other insider of the Debtors holds any interest in or is otherwise related to Purchaser.

Q. The Debtors and Purchaser negotiated the terms and conditions of the Agreement in

good faith and at arm's length. Purchaser is purchasing the Purchased Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) Purchaser recognized that the Debtors was free to deal with any other party interested in purchasing the Purchased Assets; (ii) Purchasers agreed to subject its bid to any higher or better offers; (iii) all agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed; (iv) Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction; (v) no common identity of directors or controlling stockholders exists between Purchaser and the Debtors; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

R. Neither the Debtors nor Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n). The Debtors and Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

S. No party has objected to the Sale, the Agreement, or the Transactions, on the grounds of fraud or collusion.

T. Accordingly, Purchaser is purchasing the Purchased Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m). Purchaser is therefore entitled to all of the protections afforded under Bankruptcy Code section 363(m).

**Good Faith of Lender**

U. As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their advisors marketed the assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount and form of consideration from the Lender, which is found to constitute reasonably equivalent and fair value.

V. Lender is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31). No officer, director, manager, or other insider of the Debtors holds any interest in or is otherwise related to Lender.

W. The Debtors and Lender negotiated the terms and conditions of the Agreement in good faith and at arm's length. Neither the Debtors nor Lender have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n). The Debtors and Lender were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

X. No party has objected to the Sale, the Agreement, or the Transactions, on the grounds of fraud or collusion.

**Highest and Best Offer**

Y. The Agreement constitutes the highest and best offer for the Purchased Assets the Lender Assets, and the Transactions set forth in the Agreements will provide greater overall value for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreement constitutes the highest and best offer for the Purchased Assets, the Lender Assets, and other Transactions constitutes a valid and sound exercise of the Debtors' business judgment.

Z. The Agreement represents a fair and reasonable offer to purchase the Purchased Assets and the Lender Assets under the circumstances of this Bankruptcy Case. No other entity or group of entities has offered to purchase the Purchased Assets or the Lender Assets for greater overall value to the Debtors' estates than Purchaser and Lender.

AA. Approval of the Sale Motion, the Agreement and Transactions therein, and the consummation of the Transactions are in the best interests of the Debtors' chapter 11 estates, their creditors, and other parties in interest.

BB. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale, including the sale and transfer of the Lender Assets, and Transactions prior to, and outside of, a plan of reorganization.

**No Fraudulent Transfer or Merger**

CC. The consideration (including the amount and form thereof) provided by Purchaser pursuant to the Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Purchased Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and Bankruptcy Code section 548). The consideration (including the amount and form thereof) provided by Lender for the transfer of the Lender Assets pursuant to the Agreement (a) is fair and reasonable, (b) is the highest and best offer for the Lender Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and Bankruptcy Code section 548).

DD. Purchaser is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between Purchaser and the Debtors. Purchaser is not holding itself out to the public as a continuation of the Debtors. Purchaser is not a successor to the Debtors or its estates, and the Sale does not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors.

EE. Lender is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between Lender and the Debtors. Lender is not holding itself out to the public as a continuation of the Debtors. Lender is not a successor to the Debtors or their estates, and the sale and transfer of the Lender Assets does not amount to a consolidation, merger, or *de facto* merger of Lender and the Debtors.

**Validity of Transfer**

FF. The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any of its states, territories, or possessions, or the District of Columbia. Neither the Debtors nor Purchaser nor Lender are entering into the transactions contemplated by the Agreement fraudulently or for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims.

GG. The Debtors are the sole and lawful owner of the Purchased Assets and Lender Assets. Subject to Bankruptcy Code section 363(f) (addressed below), and except as provided in the Agreement and herein, the transfer of the Purchased Assets to Purchaser will, as of the Closing Date, vest Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of any lien, claim, encumbrance or other interest in such property of any entity other than the Debtor's estate (collectively, "Interests"), including, without limitation: (a) all liens, including liens and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "Liens"); (b) all obligations arising under any government programs, and (c) all claims (as defined in 11 USC 101) and liabilities, including deposits owed on the Purchased Assets, obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Bankruptcy Case, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "Claims"), and all such Interests will attach to the proceeds of the Sale received by the Debtors ultimately attributable to the Purchased Assets, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale (subject to any claims and defenses the Debtors and its estate may possess with respect thereto). Subject to Bankruptcy Code section 363(f) (addressed below), and except as provided in the Agreement and herein, the transfer of the Lender Assets to Lender will, as of the Closing Date, vest Lender with all right, title, and interest of the Debtors in and to the Lender Assets free and clear of any Interests, including, without limitation: (a) all Liens; (b) all obligations arising under any government programs, and (c) all Claims, and all such Interests will attach to the amounts received by the Debtors ultimately attributable to the Lender Assets under the

Agreement, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale (subject to any claims and defenses the Debtors and its estate may possess with respect thereto).

(a) For the avoidance of doubt, the terms "Interests," "Liens" and "Claims," as used in this Sale Order, include, without limitation, rights with respect to any Interests, Liens and Claims:that purport to give any party a right of setoff or recoupment against, or a right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase writer option, or termination of, the Debtors' or Purchaser's interest in the Purchased Assets or Lender's interest in the Lender Assets, or any similar rights; or

(b) in respect of taxes, restrictions, rights of first refusal, charges of interest of any kind and nature, if any, and including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any of the attributes of ownership relating to, accruing, or arising at any time prior to the Closing Date, with the exception of Permitted Liens and Encumbrances and Assumed Liabilities (as those terms are defined in the Agreement) that are expressly assumed by Purchaser or Lender pursuant to the Agreement.

HH. For the further avoidance of doubt, and notwithstanding anything herein to the contrary, Purchaser is expressly assuming responsibility for, and the Purchased Assets will be transferred subject to, (i) the Assumed Liabilities, and (ii) any obligations arising at or after the Closing Date under the Agreement as set forth in the Agreement. There are no such obligations with respect to the Lender Assets.

**Sale Free and Clear Under Section 363(f) Is Satisfied**

II. The conditions of Bankruptcy Code section 363(f) have been satisfied in full;

therefore, subject to the other provisions of this Sale Order, the Debtors may (i) sell the Purchased Assets pursuant to the Agreement free and clear of any Interests in such Purchased Assets other than any Assumed Liabilities with all such Interests attaching to the proceeds of the Sale received by the Debtors and ultimately attributable to the specific Purchased Assets, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale in such specific Purchased Assets (subject to any claims and defenses the Debtors and their estates may possess with respect thereto) and (ii) transfer the Lender Assets pursuant to the Agreement free and clear of any Interests in such Lender Assets with all such Interests attaching to the amounts received by the Debtors and ultimately attributable to the specific Lender Assets under the Agreement, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale in such specific Purchased Assets (subject to any claims and defenses the Debtors and their estates may possess with respect thereto).

JJ. Purchaser would not have entered into the Agreement, and would not consummate the Transactions, if the Sale of the Purchased Assets to Purchaser and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all Interests, or if Purchaser would, or in the future could, be liable for any of such Interests. Unless otherwise expressly included in the Assumed Liabilities, Purchaser shall not be responsible for any Interests against the Debtor, its estate, or any of the Purchased Assets, including in respect of the following: (a) any deposits made by creditors or third parties on any of the Purchased Assets; (b) any labor or employment agreement; (c) all mortgages, deeds of trust, and other security interests; and (d) any other environmental, employee, workers' compensation, occupational disease, or unemployment- or temporary disability-related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee

Act of 1967 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) the unemployment compensation laws or any other similar state laws, (xii) any other state or federal benefits or claims relating to any employment with the Debtors or their predecessor, if any, (xiii) Claims or Liens arising under any Environmental Law with respect to the Debtors' business or any assets owned or operated by the Debtors or any corporate predecessor of the Debtors, at any time prior to the Closing Date, (xiv) any bulk sales or similar law, (xv) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (xvi) any statutory or common-law bases for successor liability.

KK. Lender would not have entered into the Agreement, and would not consummate the Transactions, if the transfer of the Lender Assets to Lender were not free and clear of all Interests, or if Lender would, or in the future could, be liable for any of such Interests. Lender shall not be responsible for any Interests against the Debtor, its estate, or any of the Lender Assets, including in respect of the following: (a) any deposits made by creditors or third parties on any of the Lender Assets; (b) any labor or employment agreement; (c) all mortgages, deeds of trust, and other security interests; and (d) any other environmental, employee, workers' compensation, occupational disease, or unemployment- or temporary disability-related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) the unemployment compensation laws or any other similar state laws, (xii) any other state or federal benefits or claims relating to any employment with the Debtors or their predecessor, if any, (xiii) Claims or Liens arising under any Environmental Law with respect to the Debtors' business or any assets owned or operated by the Debtors or any corporate predecessor

of the Debtors, at any time prior to the Closing Date, (xiv) any bulk sales or similar law, (xv) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (xvi) any statutory or common-law bases for successor liability.

LL. The Debtors may sell the Purchased Assets pursuant to the Agreement free and clear of all Interests in such property of any entity other than the Debtors' estates, including, without limitation, any Liens and Claims against the Debtors, their estates, or any of the Purchased Assets (other than the Assumed Liabilities) because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests in the Purchased Assets prior to the Closing Date, including, without limitation, holders of Liens and Claims against the Debtors, their estates, or any of the Purchased Assets, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2). All other holders of Interests (except to the extent that such Interests are Assumed Liabilities) are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates, or any of the Purchased Assets, attached to the proceeds of the Sale received by the Debtors ultimately attributable to the specific Purchased Assets in which such party alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto. The Debtors may transfer the Lender Assets pursuant to the Agreement free and clear of all Interests in such property of any entity other than the Debtors' estates, including, without limitation, any Liens and Claims against the Debtors, their estates, or any of the Lender Assets because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied. Those holders of Interests in the Lender Assets prior to the Closing Date, including, without limitation, holders of Liens and Claims against the Debtors, their estates, or any of the Lender Assets, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section

363(f)(2). All other holders of Interests (except to the extent that such Interests are Assumed Liabilities) are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates, or any of the Lender Assets, attached to the amounts received by the Debtors ultimately attributable to the specific Lender Assets pursuant to the Agreement, in which such party alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**Sound Business Purpose for the Sale**

MM. Good and sufficient reasons for approval of the Agreement and the Sale, and the transfer of the Lender Assets to Lender have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

NN. The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Agreement, and (b) compelling circumstances for the sale outside the ordinary course of business, pursuant to Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser and to Lender, and consummation of the Transactions is necessary and appropriate to maximize the value of the Debtors' estates, and the Sale and Transactions, including the transfer of the Lender Assets to Lender, will provide the means for the Debtors to maximize distributions to creditors.

**Compelling Circumstances for an Immediate Sale**

OO. To maximize the value of the Purchased Assets and Lender Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets and transfer of the Lender Assets occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Sale and Transactions.

PP. Given all of the circumstances of the Bankruptcy Case and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Purchased Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and

should be approved. Given all of the circumstances of the Bankruptcy Case and the adequacy and fair value of the amounts to be paid to the estate by the Lender under the Agreement, the proposed transfer of the Lender Assets to the Lender constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

QQ. The consummation of the Sale, consummation of the Transactions, including the transfer of the Lender Assets to the Lender, and the assumption and assignment of the Assigned Contracts, upon the terms set forth in this Sale Order, are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, BASED ON THE ABOVE THE COURT ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:

**General Provisions.**

1. **Relief Granted.** The Sale Motion is **GRANTED.** The relief requested in the Sale Motion as modified and the Transactions are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which are incorporated herein as if fully set forth in this Sale Order.

2. **Objections Overruled.** All objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled by the terms of this Sale Order, including, without limitation, any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits, with prejudice. Those parties who did not object, or withdrew their objections, to the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2) to the Sale of the Purchased Assets as provided for herein.

**Approval of the Agreement**

3. **Agreement Approved.** The Agreement, the exhibits thereto and all other ancillary

documents, and all of the terms and conditions thereof, are hereby approved.

4. **Authorization to Consummate Transactions.** Pursuant to Bankruptcy Code sections 363(b) and (f), the Debtors are authorized, empowered, and directed to take any and all actions necessary or appropriate to (a) consummate the Sale, the transfer of the Lender Assets to the Lender, and the Transactions pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Sale and the Transactions as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Agreement, in accordance with the procedures set forth in the Agreement and this Sale Order, together with additional instruments and documents that Purchaser may deem reasonably necessary or desirable to implement the Agreement, the Sale and the Transactions.

**<u>Transfer of the Purchased Assets</u>**

5. **Transfer of the Purchased Assets Authorized.** Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors are authorized and directed to transfer the Purchased Assets to Purchaser on or as soon as reasonably practicable after the Closing Date, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title to the Purchased Assets, subject to the terms of the Agreement and this Sale Order.

6. **Direction to Surrender or Turn Over Purchased Assets by Third Parties.** Except as otherwise agreed by Purchaser, all persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date shall surrender possession of such Purchased Assets to Purchaser or its designee as soon as practicable and no later than 45 days from the entry of this Order. The Purchaser shall retrieve the Purchased Assets "as is/ where is" and pay all costs directly and reasonably associated with retrieving the Purchased Assets. On the Closing Date, each of the Debtors' creditors are authorized, ordered and directed to execute such documents and take such other actions as Purchaser or Debtors may deem reasonably necessary to release their Interests

in the Purchased Assets, if any, as such Interests may have been recorded or may otherwise exist. All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the Agreement and this Sale Order. The Court specifically reserves jurisdiction to enter appropriate orders requiring parties to comply with their obligation to turnover Purchased Assets to the Purchaser.

7. **Transfer Free and Clear of Interests.** The transfer of the Purchased Assets to Purchaser shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, (a) successor or successor-in-interest liability, and (b) Claims in respect of the Excluded Liabilities, with all such Interests to attach to the proceeds received by the Debtors ultimately attributable to the Purchased Assets against, or in, which such Interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Purchased Assets, subject to any rights, claims, and defenses that the Debtor or its estate, as applicable, may possess with respect thereto.

8. **Legal, Valid, and Marketable Transfer with Permanent Injunction.** The transfer of the Purchased Assets to Purchaser upon the Closing pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Purchased Assets, and vests, or will vest, as of the Closing Date, Purchaser with all right, title, and interest to the Purchased Assets, free and clear of all Interests, and all such Interests will attach to the proceeds of the Sale received by the Debtors ultimately attributable to the specific Purchased Assets, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale in such specific Purchased Assets (subject to any claims and defenses the Debtors and their estates may possess with respect thereto).

9. **Recording Offices and Releases of Interests.** On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete

assignment, conveyance, and transfer of the Purchased Assets or a bill of sale transferring good and marketable title of the Purchased Assets to Purchaser. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing date, other than Permitted Liens and Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected, and all such Interests will attach to the proceeds of the Sale received by the Debtors ultimately attributable to the Purchased Assets, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale (subject to any claims and defenses the Debtors and their estates may possess with respect thereto). This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or recorded with any other governmental agency to act to cancel any Interests against the Purchased Assets, other than the Permitted Liens and Encumbrances and the Assumed Liabilities.

10. **Cancellation of Third-Party Interests.** If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Purchased Assets has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction,

releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Purchased Assets, then the Debtor and Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets. Notwithstanding the foregoing, subject to the satisfaction or waiver of the conditions precedent to Closing set forth in the Agreement, the provisions of this Sale Order authorizing the transfer of the Purchased Assets free and clear of all Interests (except only for Permitted Liens and Encumbrances, Assumed Liabilities and Valid Senior Liens) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

11. **Assumption and Assignment of Executory Contracts and Unexpired Leases.** With respect to any executory contract or unexpired lease of the Debtors, the Purchaser shall have up to 30 days from the entry of the Sale Order to designate executory contracts or leases to have assumed and assigned to Purchaser. Any allowed cure amount related to assumption of any executory contract or unexpired lease shall be paid and funded by the Purchaser. Any assumption of an executory contract or lease requires further court approval.

**Prohibition of Actions Against Purchaser**

12. **No Successor Liability.** Except for the Assumed Liabilities set forth in the Agreement, or as otherwise expressly provided for in this Sale Order or the Agreement, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of

antitrust, environmental, successor, or transfer reliability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, with or liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.

13. **Actions Against Purchaser Enjoined**. Except with respect to the Assumed Liabilities set forth in the Agreement, or as otherwise permitted by the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interest of any kind or nature whatsoever against, or in, all or any portion of the Purchased Assets, arising under, out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against Purchaser, or any of its affiliates, successors, or assigns, or their property or the Purchased Assets, such persons' or entities' Interests in and to the Purchased Assets, including, without limitation, the following actions against Purchaser or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the

business operated with the Purchased Assets.

**Transfer of the Lender Assets**

14. **Lender Claim.** Debtors shall amend their schedules to reflect that the Lenders have an undisputed, noncontingent, unliquidated secured claim against each of Clarity Lab Solutions and Clarity Diagnostics in the amount of $13,155,856.17 ("Lender Claim"). The Lender Claim shall not be subject to further challenge by the Debtor or any successor trustee of the Debtor. Neither the Debtor, nor any successor trustee of the Debtor, shall further amend the schedules to alter the designation of the claims of the Lenders.

15. **Debtors' Release of Lender**. Except for any express obligations of Lender hereunder, each of the Debtors, on behalf of itself and any party claiming by, through, or on behalf of any of the Debtors (the "Debtor Releasing Parties"), hereby fully, finally, and forever release and discharge FCS Advisors LLC d/b/a Brevet Capital Advisors and each of its current and former agents, employees, advisors, consultants, representatives, and other professionals, investors, affiliates, subsidiaries, predecessors, successors and assigns, as applicable and, with respect to each of the foregoing, all of their current and former directors, managers, officers, equity holders, investors (including, without limitation, direct and indirect investors through FCS), affiliates, predecessors, subsidiaries, successors, assigns, and their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, as applicable and all parties only in such capacities (collectively, the "FCS Parties"), from any and all actions, claims, demands, causes of action, liabilities, losses, suits, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminutions in value, disbursements, expenses, and other obligations of any kind or nature whatsoever, in each case, existing as of the date hereof, whether known or unknown, whether contingent or non-contingent, whether at law, in equity, or otherwise

and interest or other carrying costs, penalties, legal, accounting, and other professional fees and expenses, and incidental, consequential, and punitive damages payable with respect to, arising from, related to, or in connection with the these bankruptcy proceedings and cases, or any claims arising from, related to, or in connection with the any business or financial transaction between any FCS Party and the Debtors, including any loans provided by FCS, or any other relationship among FCS and the Debtors, or the FCS Parties and the Debtors. All persons and entities are hereby forever prohibited from commencing or continuing in any matter any action or other proceeding, the employment of process, or any act (whether at law or in equity, in any judicial, administrative, arbitral, or other proceeding) against the FCS Parties with respect to, arising from, related to, or in connection with the these bankruptcy proceedings and cases, or any claims arising from, related to, or in connection with the any business or financial transaction between FCS and the Debtor Releasing Parties, including any loans provided by FCS or any other relationship among FCS and the Debtor Releasing Parties, or the FCS Parties and the Debtor Releasing Parties.

16. **Waiver of Unknown Claims.** Each of the Debtors understands and acknowledges that it is releasing potentially unknown claims, and that it may have limited knowledge with respect to some of the claims being released. Each of the Debtors acknowledges that there is a risk that, after entering into the Agreement, it may learn information that might have affected its decision to enter into the Agreement. Each of the Debtors assumes this risk and all other risks of any mistake in entering into the Agreement. Each of the Debtors agrees that the Agreement is fairly and knowingly made. In addition, each of the Debtors expressly waives and releases any and all rights and benefits under Section 1542 of the Civil Code of the State of California (or any analogous law of any other state), which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

17. **Covenant Not to Sue.** Each of the Debtors, on behalf of itself and the Debtor Releasing Parties, covenant, represent and warrant that it shall not sue or cause to be sued (including through an alternative dispute resolution mechanism or administrative forum), or file or cause to be filed or initiated, any complaint, lawsuit, and/or other claims, directly or through a third party, asserting any of the claims released by the Agreement against any of the FCS Parties.

18. **Transfer of Assets to Lender Authorized**. Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors are authorized and directed to transfer the Lender Assets on or as soon as reasonably practicable after the Closing Date to the Lender, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Lender Assets and shall vest Lender with all beneficial interest in the Debtors' Covid A/R and title where applicable to the Lender Assets, subject to the terms of the Agreement and this Sale Order.

19. **Direction to Surrender or Turn Over Lender Assets by Third Parties.** Except as otherwise agreed by Lender, all persons and entities that are in possession of some or all of the Lender Assets on the Closing Date shall surrender possession of such Lender Assets to Lender or its designee as soon as practicable and no later than 10 days from the entry of this Order. On the Closing Date, each of the Debtors' creditors are authorized, ordered and directed to execute such documents and take such other actions as Lender or Debtors may deem reasonably necessary to release their Interests in the Lender Assets, if any, as such Interests may have been recorded or may otherwise exist. All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Lender Assets to Lender in accordance with the terms of the Agreement and this Sale Order. The Court specifically reserves jurisdiction to enter appropriate orders requiring parties to comply with their obligation to turnover Lender Assets to the Lender.

20. **Transfer Free and Clear of Interests.** The transfer of the Lender Assets to Lender

shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, successor or successor-in-interest liability, with all such Interests to attach to the amounts received by the Debtors ultimately attributable to the Lender Assets under the Agreement, including the Estate Payment (as defined in the Agreement), against, or in, which such Interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Lender Assets, subject to any rights, claims, and defenses that the Debtor or its estate, as applicable, may possess with respect thereto.

21. **Legal, Valid, and Marketable Transfer with Permanent Injunction.** The transfer of the Lender Assets to Lender upon the Closing pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Lender Assets, and vests, or will vest, as of the Closing Date, Lender with all right, title, and interest to the Lender Assets, free and clear of all Interests, and all such Interests will attach to the amounts received by the Debtors ultimately attributable to the specific Lender Assets under the Agreement, including the Estate Payment, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale in such specific Lender Assets (subject to any claims and defenses the Debtors and their estates may possess with respect thereto).

22. **Recording Offices and Releases of Interests.** On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Lender Assets or a bill of sale transferring good and marketable title of the Lender Assets to Lender. This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Lender Assets prior to the Closing Date shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected, and all such Interests will attach to the amounts received by the Debtors ultimately attributable to the Lender Assets under the Agreement, in the same order of priority, with the same validity, force, and effect

that such Interests had prior to the Sale (subject to any claims and defenses the Debtors and their estates may possess with respect thereto). This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or recorded with any other governmental agency to act to cancel any Interests against the Lender Assets.

23. **Cancellation of Third-Party Interests.** If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Lender Assets has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Lender Assets, then the Debtor and Lender are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Lender Assets. Notwithstanding the foregoing, subject to the satisfaction or waiver of the conditions precedent to Closing set forth in the Agreement, the provisions of this Sale Order

authorizing the transfer of the Lender Assets free and clear of all Interests shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

**Prohibition of Actions Against Lender**

24. **No Successor Liability.** Lender shall not have any liability or other obligation of the Debtor Parties arising under or related to any of the Lender Assets. Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, Lender shall not be liable for any Claims against the Debtor Parties or any of their predecessors or affiliates, and Lender shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer reliability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, with or liquidated or unliquidated, including, without limitation, liabilities on account of warranties, intercompany loans, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Debtors' assets prior to the Closing.

25. **Actions Against Lender Enjoined**. Except as otherwise permitted by the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interest of any kind or nature whatsoever against, or in, all or any portion of the Lender Assets, arising under, out of, in connection with, or in any way relating to, the Debtors, the Lender Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Lender Assets to Lender, hereby are forever barred, estopped, and permanently enjoined from asserting against Lender, or any of

its affiliates, successors, or assigns, or their property or the Lender Assets, such persons' or entities' Interests in and to the Lender Assets, including, without limitation, the following actions against Lender or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Lender Assets or conduct any of the business operated with the Lender Assets.

**Mutual Release Between Lender and Purchaser**

26. Effective as of the Closing, Lender, on behalf of itself and its affiliates, successors and assigns, hereby fully and unconditionally releases, acquits and forever discharges Purchaser and each of its respective affiliates, and their respective affiliates' former, current and future holders of equity, controlling persons, directors, officers, employees, agents, representatives, affiliates, members, managers, general or limited partners, or assignees (or any former, current or future equityholder, controlling person, director, officer, employee, agent, representative, affiliate, member, manager, general or limited partner, or assignee of any of the foregoing) (the "Purchaser Releasees") from any and all manner of actions, causes of actions, claims, obligations, demands, damages, costs, expenses, compensation or other relief, whether known or unknown, whether at law or in equity (collectively, the "Actions"), arising out of or relating to or accruing on or prior to the Closing related to the Debtors or any relationship between the Debtors and Purchaser or any relationship between the Debtors and Lender or arising out of any assets acquired from the Debtors, on or prior to the Closing, other than any claims or Actions arising from a breach of the Agreement

by the Purchaser.

27. Effective as of the Closing, Purchaser, on behalf of itself and its affiliates, successors and assigns, hereby fully and unconditionally releases, acquits and forever discharges Lender and each of its respective affiliates, and their respective affiliates' former, current and future holders of equity, controlling persons, directors, officers, employees, agents, representatives, affiliates, members, managers, general or limited partners, or assignees (or any former, current or future equityholder, controlling person, director, officer, employee, agent, representative, affiliate, member, manager, general or limited partner, or assignee of any of the foregoing) (the "Lender Releasees") from any and all manner of Actions, arising out of or relating to or accruing on or prior to the Closing related to the Debtors or any relationship between the Debtors and Lender or any relationship between the Debtors and Purchaser or arising out of any assets acquired from the Debtors, on or prior to the Closing, other than any claims or Actions arising from a breach of the Agreement by the Lender.

28. **Waiver of Unknown Claims.** Each of the Lender and the Purchaser, on behalf of itself and its respective affiliates, successors and assigns, understands and acknowledges that it is releasing potentially unknown claims, and that it may have limited knowledge with respect to some of the claims being released. Each of the Lender and the Purchaser acknowledges that there is a risk that, after entering into the Agreement, it may learn information that might have affected its decision to enter into the Agreement. Each of the Lender and the Purchaser assumes this risk and all other risks of any mistake in entering into this Agreement. Each Party agrees that this Agreement is fairly and knowingly made. In addition, each of the Lender and the Purchaser expressly waives and releases any and all rights and benefits under Section 1542 of the Civil Code of the State of California (or any analogous law of any other state), which reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME

OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

29. **Covenant Not to Sue.** Each of the Lender and the Purchaser, on behalf of itself and its respective affiliates, successors and assigns, each also covenant, represent and warrant that it shall not sue or cause to be sued (including through an alternative dispute resolution mechanism or administrative forum), or file or cause to be filed or initiated, any complaint, lawsuit, and/or other claims, directly or through a third party, asserting any of the claims released by this Order or the Agreement against any of the Purchaser Releasees or the Lender Releasees, as applicable.

**Other Provisions**

30. **Effective Immediately.** For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), and 7062(g), this Sale Order shall not be stayed and shall be effective immediately upon entry, and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this Sale Order. The Debtors and Purchaser may consummate the Agreement and Transactions at any time after entry of this Sale Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Sale without any notice to the Court, any pre- petition or post-petition creditor of the Debtor and/or any other party in interest.

31. **Agreement Approved in Entirety.** The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety. In accordance with the Agreement, these bankruptcy cases shall remain open for the lesser of two years from the Closing Date or when no longer necessary to facilitate the collection of the Debtors' Covid A/R (the "Collection Period"). The Collection Period can be extended by mutual agreement of the Debtors, any successor of the Debtors and the Lender, or by order of this Court.

32. **Modifications to Agreement.** The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

33. **Standing.** The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtors are formed or authorized to transact business.

34. **Authorization to Effect Order.** The Debtors are authorized and directed to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

35. **Automatic Stay.** The automatic stay pursuant to Bankruptcy Code section 362 is hereby modified, lifted, and annulled with respect to the Debtors, Purchaser, and Lender to the extent necessary, without further order of this Court, to (a) allow Purchaser and/or Lender to deliver any notice provided for in the Agreement, (b) allow Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof, and (c) allow Lender to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

36. **No Other Bids.** No further bids or offers for the Purchased Assets or Lender Assets shall be considered or accepted by the Debtors after the date hereof unless the Sale to Purchaser is not consummated or otherwise do not occur in accordance with the Agreement or its related documents.

37. **Order to Govern.** To the extent that this Sale Order is inconsistent with any prior order entered or pleading filed in the Bankruptcy Case, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order

shall govern.

38. **Retention of Jurisdiction.** The Court shall retain jurisdiction to interpret and enforce this Sale Order and to adjudicate any disputes arising from or relating the Agreement, the Transactions, or any other matters pertaining to the Sale.

# # #

Submitted by:
Bradley S. Shraiberg
Shraiberg Page P.A.
2385 NW Executive Center Dr., Suite 300
Boca Raton, FL 33431
T: 561-443-0800
F: 561-998-0047
bss@slp.law

*Bradley S. Shraiberg is directed to serve a copy of this Order on all appropriate parties and to file a certificate of service.*

# EXHIBIT A

## CLARITY TERM SHEET

1. Clarity Lab Group LLC (the "Purchaser") shall acquire, as of the closing date (“**Closing**”) all of Debtors' assets (the "**Purchased Assets**") with the exception of: (i) Debtors' Cash Collateral (as defined herein), (ii) Debtors' Covid A/R (as defined herein); (iii) any asset expressly excluded by Purchaser; and (iv) all of Debtors' obligations related to any third party that is not expressly assumed by Purchaser. With respect to any executory contract or lease of the Debtors, the Purchaser shall have up to 30 days to decide to assume such executory contract or lease. Any cure amount shall be paid by the Purchaser. Purchaser acknowledges that any assumption of an executory contract or lease requires court approval and this agreement is not subject to any contract being assumed.

2. Debtors shall execute a transition management agreement with Purchaser in form and substance acceptable to Purchaser wherein Debtors shall be obligated to, inter alia, take all actions necessary for Purchaser to seek any appropriate regulatory approval for the post-closing operation of the Debtors' assets (the “**Transition Management Agreement**”). For the avoidance of doubt, Purchaser shall not be obligated to provide the Debtors or the Debtors' estates any additional consideration for obligations the Debtors consent to provide Purchaser pursuant to the Transition Management Agreement.

3. All cash, cash equivalents, and proceeds from account receivables generated by Debtors prior to the closing date other than the Debtors' Covid A/R (collectively, the "**Cash Collateral**") shall be deposited in a controlled account designated by Debtors' lender, FCS Advisors LLC d/b/a Brevet Capital Advisors (the "**Lender**").

4. All cash up to $600,000 and, to the extent cash is less than $600,000, all proceeds from the current A/R (up to the Closing) up to $600,000 shall be funded to Lender and applied to Lender's existing secured claim (the "**Initial Lender Payment**"), prior to the cash or current A/R being used for any other purpose.

5. Lender shall carve-out to the benefit of the Debtors' estates from the actual Initial Lender Payment received by Lender the following: (i) $50,000 earmarked for Debtors' general bankruptcy counsel, and (ii) $50,000 for the Debtors’ estates, with such amounts to be used first to pay past-due payroll for non-insiders of the Debtors in accordance with the budget prepared by the Debtors on or about January 8. (collectively, the "**Lender Carve-out**"). Lender Carve-Out shall be funded by Lender at the Closing and such payment shall be paid from the cash component of the Initial Lender Payment. The sole sources of funds for any further fees and expenses of Debtors’ general bankruptcy counsel in the bankruptcy proceedings shall be the Initial Purchase Payments (defined herein), and the Estate Payment (defined herein).

6. Upon the Lender having received the Initial Lender Payment in full in cash (whether from cash or collection of the accounts receivables into cash), Purchaser shall be authorized to use up to $300,000 of the Cash Collateral to settle landlord lease negotiation or any other amounts the Court requires to be paid by the Debtors (the "**Past Due Cash Collateral**").

7. With the exception of the Past Due Cash Collateral and the Lender Carve-out, all remaining Cash Collateral shall be retained by the Lender in partial satisfaction of Lender's secured claim.

8. Purchaser shall fund a purchase price in the minimum amount of $1,040,000 (the "**Minimum Purchase Price**").

9. The Minimum Purchase Price shall increase by an amount equal to 2.5 times the amount of Past Due Cash Collateral used by Purchaser (the "**Purchase Price Enhancement**"). Under all circumstances, the Minimum Purchase Price and the Purchase Price Enhancement shall not exceed the aggregate sum of $1,790,000 (the "**Total Purchase Price**"). The Total Purchase Price actually received by Lender shall be credited on behalf of the Debtors in partial satisfaction of Lender's secured claims against the Debtors.

10. Purchaser shall fund the Total Purchase Price as follows:

(i) $40,000 paid: (i) $20,000 at Closing; and (ii) four (4) equal monthly installments of $5,000 to the Debtors' estates commencing on the 30th day after Closing earmarked for satisfying any allowed administrative claims for general counsel of the Debtors (the "**Initial Purchase Payments**"), provided that the Initial Purchase Payments shall not be paid from the Cash Collateral or Past Due Cash Collateral;

(ii) Purchaser shall fund a sum equal to 4% of the gross revenues generated by Purchaser from the Purchaser's operation[3] for the time period between closing and the third anniversary of the closing date, remitted by Purchaser to Lender on behalf of the Debtors as follows:

(a) On January 5, 2026, the Purchaser shall fund to Lender for the benefit of the Debtors the sum of 4% of the gross revenues generated by the Purchaser's operation of the Purchased Assets for the time period between closing and December 31, 2025 (the "**Initial Revenue Purchase Payment**");

(b) Purchaser shall remit to Lender on behalf of the Debtors the difference of the Total Purchase Price and the Initial Purchase Payment by remitting 4% of the gross revenues generated by the Purchaser's operation of the Purchased Assets until the Total Purchase Price is satisfied in full pursuant to the following payment schedule:

(1) April 5, 2026 (the "**Second Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for January 1, 2026 through March 31, 2026;

(2) July 5, 2026 (the "**Third Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for April 1, 2026 through June 30, 2026;

[3] For the avoidance of doubt, gross revenues shall expressly exclude any revenues generated by any affiliate of Purchaser from the operation of any affiliate except to the extent that the affiliate is generating revenue from the Purchased Assets, in which case the revenues generated from the Purchases Assets by the affiliate will be calculated in the 4% of gross revenues payable by the Purchaser.

(3) October 5, 2026 (the "**Fourth Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for July 1, 2026 through September 30, 2026;

(4) January 5, 2027 (the "**Fifth Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for October 1, 2026 through December 31, 2026;

(5) April 5, 2027 (the "**Sixth Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for January 1, 2027 through March 31, 2027;

(6) July 5, 2027 (the "**Seventh Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for April 1, 2027 through June 30, 2027; and

(7) October 5, 2027 (the "**Eighth Revenue Purchase Payment**") calculated based upon 4% of gross revenue generated from the Purchased Assets for July 1, 2027 through September 30, 2027.

(c)Purchase shall fund on or before the third anniversary of the closing date, (the "**Final Purchase Payment**") any remaining sum owed on the Total Purchase Payment.

11. All beneficial interests in (including all rights to control and make decisions regarding collection of) the accounts receivable generated for covid testing (the "**Debtors' Covid A/R**") shall be assigned to Lender. "**Net Collections**" shall mean the amount collected from the Debtors' Covid A/R, net of all costs of collection and expenses incurred or accrued by Lender or other fees in connection with collection, including costs incurred or accrued by Lender and/or any collection firm. From the first $5,000,000 of Net Collections, Lender shall pay the Debtors an amount equal to 7.5% of the amount of Net Collections actually received by the Lender during the month prior to the payment ("**Estate Payment**") which amount shall be paid each month on the fifth of the month or as soon thereafter as possible. No Estate Payment shall be due on any Net Collections over $5,000,000, as calculated on a cumulative basis. With the Bankruptcy cases to remain open for the lesser of two years from the effective date or when no longer necessary to facilitate the collection of the Debtors' Covid A/R (the "**Collection Period**"). The Collection Period can be extended by mutual agreement of the Debtors, any successor of the Debtors, and the Lender or by order of the Court.

12. Lender and Purchaser shall exchange general mutual releases with the exception of any obligations owed under the sale.

13. Debtors shall release Lenders from all claims.

**14.** Debtors shall amend their schedules to reflect that the Lenders have an undisputed, noncontingent, unliquidated secured claim against each of Clarity Lab Solutions and Clarity Diagnostics in the amount of $13,155,856.17 ("Lender Claim"). The Lender Claim shall not be subject to further challenge by the Debtor or any successor trustee of the Debtor. Neither the Debtor, nor any successor trustee of the Debtor, shall further amend the schedules to alter the designation of the claims of the Lenders.