Page 1

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2                WEST PALM BEACH DIVISION
3
4                              CASE NO. 24-18938-EPK
5
6   IN RE:
7    CLARITY DIAGNOSTICS, LLC,
8                Debtor.
    _____/
9
10
11
12
13  RENEWED MOTION TO SELL FREE AND CLEAR (64), AMENDED MOTION
    TO SELL FREE AND CLEAR (174), MOTION TO EXTEND EXCLUSIVITY
14    (158), JOINT MOTION TO EXTEND TIME TO ASSUME (160) AND
            EXPEDITED MOTION TO USE CASH COLLATERAL (11)
15
16                     January 17, 2025
17             The above-entitled cause came on for hearing
18  before the Honorable ERIK P. KIMBALL, Chief Judge of the
19  UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN
20  DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West
21  Palm Beach, Palm Beach County, Florida, on January 17,
22  2025, commencing at or about 10:00 a.m., and the following
23  proceedings were had:
24            Transcribed from a Digital Recording By:
               Anna M. Meagher, Shorthand Reporter
25

Page 2

```
 1                      APPEARANCES:
 2                   Akerman, LLP, by
                    Eyal Berger, Esquire
 3            On behalf of Clarity Lab Group, LLC
               Email:  Eyal.berger@akerman.com
 4

 5

                VIA ZOOM VIDEO CONFERENCE:
 6

 7            Shraiberg Page, P.A., by
            Bradley S. Shraiberg, Esquire
 8             On behalf of the Debtor
                  Email:  Bss@slp.law
 9

10                  Steptoe, LLC, by
              Joshua R. Taylor, Esquire
11            On behalf of FCS Advisors, LLC
            d/b/a Brevet Capital Advisors, LLC
12

13            Berger Singerman, LLP, by
                 Paul A. Avron, Esquire
14      Local counsel on behalf of FCS Advisors, LLC
              d/b/a Brevet Capital Advisors, LLC
15          Email:  Pavron@bergersingerman.com
16

                   Lorium Law, by
17             George L. Zinkler, Esquire
        On behalf of Greenwoods Equipment Finance, LLC
18           Email:  Gzinkler.ecf@rprslaw.com
19

               Office of the US Trustee, by
20           Heidi A. Feinman, Attorney/Advisor
              Email:  Heidi.A.Feinman@usdoj.gov
21

22                  - - - - - - -
23

24

25
```

```
 1                    THE CLERK:  All rise.  This Honorable Court
 2   is now in session.  Chief Judge Kimball presiding.
 3                    THE COURT:  Good morning.  Thank you.
 4                    Ms. Leonard -- please have a seat --
 5   whenever you're ready.
 6                    THE CLERK:  Okay.  The first matter on the
 7   ten o'clock docket is Clarity Diagnostics, LLC, Case No.
 8   24-18938.
 9                    Mr. Shraiberg.
10                    MR. SHRAIBERG:  Good morning, your Honor.
11   Brad Shraiberg on behalf of the debtors.  I'm joined today
12   with the company's president, Mr. Richard Simmons and
13   Mr. Warren Wright will be here as well in a moment.
14                    THE CLERK:  Ms. Feinman.
15                    MS. FEINMAN:  Good morning, your Honor.
16   Heidi Feinman for the U.S. trustee.
17                    THE CLERK:  Mr. Taylor.
18                    MR. TAYLOR:  Good morning, your Honor.
19   Joshua Taylor on behalf of FCS Advisors, LLC as junior
20   secured -- (inaudible).
21                    THE CLERK:  Sorry.  Mr. Avron.
22                    MR. AVRON:  Good morning, your Honor.  Also
23   appearing on behalf of FCS Advisors, my name is Paul
24   Avron.  Thank you.
25                    THE CLERK:  And, Mr. Zinkler.
```

```
 1                    MR. ZINKLER:  Good morning, your Honor.
 2    George Zinkler on behalf of Greenwoods Equipment Finance,
 3    LLC.
 4                    THE CLERK:  Is Mr. Colon making an
 5    appearance?
 6                    MR. COLON:  I'm on.  Good morning.
 7                    THE CLERK:  And in the courtroom.
 8                    MR. BERGER:  Good morning, your Honor.  Eyal
 9    Berger, B-E-R-G-E-R, on behalf of the proposed purchaser,
10    Clarity Lab Group, LLC.
11                    THE COURT:  Thank you.
12                    I thought it had a different name.
13                    MR. BERGER:  It did, your Honor.  We had to
14    change it because of a name conflict with the secretary of
15    state.
16                    THE COURT:  Understood.  Understood.
17                    Very good.  Mr. Shraiberg.
18                    MR. SHRAIBERG:  Thank you, your Honor.  And,
19    once again, I wanted to thank the Court for hearing this
20    matter on an expedited basis.
21                    This is Docket Entry 185.  It is the
22    debtor's renewed motion to approve sale of substantially
23    all of the debtor's assets.  In the gap period between
24    last week's hearing and this week, the parties have
25    actively negotiated with both our secured creditor, our
```

1   proposed purchaser, the United States trustee's office,

2   and even Mr. Zinkler's client.  And I'm pleased to inform

3   the Court that the result of those negotiations has now

4   led to at least a consensual deal for today, and it is

5   this consensual deal that we are presenting to the Court.

6            If the Court may recall, our original motion

7   to approve sale was for $200,000, subject to higher and

8   better offers.  This deal is substantially better than

9   what was originally proposed in the fact that this deal

10  has the ability to bring the estate alone up to $350,000

11  and will bring Brevet Capital approximately close to $1.8

12  million.

13            And if I may, Your Honor, I'd like to

14  present -- what we did was, we filed, right before this

15  hearing, a proposed order, and that's just to help with my

16  presentation and to follow along with the presentation to

17  approve the sale.

18            THE COURT:  So you think it'll be useful for

19  me to open that?

20            MR. SHRAIBERG:  Yes, Your Honor.  But I want

21  to give the caveat, before Mr. Taylor takes his phone off

22  mute, that this is just a proposed order.  It does not

23  incorporate all parties' proposed changes.  It was filed

24  specifically just to help all parties with my presentation

25  today, following along with my presentation.

1                    THE COURT:  Oh, you mean there's negotiation

2       remaining?

3                    MR. SHRAIBERG:  I think --

4                    THE COURT:  I just wonder if my tone can be

5       reflected in that question.  Let the record show that

6       "there's negotiation remaining" has been a repeated

7       refrain in this case for -- I don't even know how many

8       hearings.

9                    So if you're telling me that this is really

10      not the proposed order, I have no hope that I'll see one

11      after this hearing.

12                   MR. TAYLOR:  Your Honor, if I could jump in

13      again, Josh Taylor for FCS Advisors.

14                   THE COURT:  Yeah, that seemed like an

15      invitation for you.

16                   MR. TAYLOR:  We received the draft last

17      night and are working on it.  I think our changes are

18      largely consistent with what you're going to see in there.

19      The proposed draft at the moment is very focused on the

20      transfer to the purchaser, and we're going to have similar

21      provisions about the transfer of certain things to the

22      lender, as well as some of the other terms that affect the

23      lender that are in the term sheet.

24                   But I don't think there's negotiation of the

25      deal still ongoing.  It's just reflecting that accurately

1    in the order.  Things are moving very quickly, so we just

2    haven't had time to get through the order yet.

3                    THE COURT:  Understood.

4                    Mr. Shraiberg.

5                    MR. SHRAIBERG:  Thank you, Your Honor.

6                    With regard to -- well, first, I would say

7    that Mr. Simpson is here to support the proffer that I'll

8    make for the various facts in support of this motion and

9    available if any party would like to cross-examine him.  I

10   would be starting basically on page 2, and in an effort to

11   move this along, there are traditional boilerplate

12   provisions that I will move quickly through, instead of

13   doing a line-by-line presentation.

14                   We believe the Court clearly has

15   jurisdiction over this matter.  It's a core proceeding.

16   The venue is proper.  The basis for the relief requested

17   today are Sections 105(a), 363, and 365 of the Bankruptcy

18   Code.  We are seeking a final order from this Court

19   pursuant to 28 Section 158(a).  We will be asking that the

20   Court retain jurisdiction for any dispute with regard to a

21   proposed order.

22                   With regard to the notice of sale, actual

23   written notice of the sale motion was served as applicable

24   upon; one, the Office of the United States Trustee; two,

25   all creditors or their counsel known to the debtor to

1   assert a lien, including any security interest, claim,

2   right, interest, or encumbrance of record against all or

3   any portion of the purchased assets; three, all parties in

4   interest who have requested notice pursuant to Bankruptcy

5   Rule 2002; four, all counterparties to any executory

6   contract or unexpired lease of the debtors, and five, all

7   other known creditors and interest holders of the debtor.

8   We believe that proper, timely, adequate, and sufficient

9   notice of the sale motion and the sale hearing has been

10  provided in accordance with the Bankruptcy Code Sections

11  105(a), 363, and 365, as well as the applicable rules.

12              Once again, this motion was originally filed

13  as a motion to approve a sale for $200,000.  This deal is

14  substantially -- and no one showed up to that hearing to

15  object.  This deal is substantially higher than that prior

16  deal.

17              THE COURT:  You mean no one other than the

18  one secured creditor?

19              MR. SHRAIBERG:  Correct.  I apologize, Your

20  Honor.  Yes.

21              We believe that a reasonable opportunity to

22  object and be heard with respect to the sale and the sale

23  motion and the relief requested therein has been afforded

24  to all interested persons and entities, including all

25  noticed.

1           With regard to the purchaser, the purchaser

2    is not an insider of the debtor.  In fact, the purchaser

3    was originally presented to the debtor by Brevet Capital.

4    No officer, director, manager or other insider of the

5    debtors holds any interest in or is otherwise related to

6    the purchaser.  In fact, the two managers that are here

7    with me today can represent to the Court, they haven't

8    even been presented with any type of a job offer or a

9    contract to continue working as of this moment.  It is

10   their intention to continue working for the company,

11   though.

12           The debtors and purchasers negotiated the

13   terms and conditions of the agreement in good faith and at

14   arm's length.  The purchaser is purchasing the purchased

15   assets and has entered into the agreement in good faith

16   and is a good faith buyer within the meaning of the

17   Bankruptcy Code Section 363(m).  And for this reason,

18   today we will be seeking a finding that they're entitled

19   to the full protections of 363(m) and has otherwise

20   proceeded in good faith in all respects in connection with

21   this proceeding.

22           THE COURT:  Is the purchaser an affiliate of

23   any creditor in the case?

24           MR. SHRAIBERG:  No, Your Honor.

25           THE COURT:  Thank you.

1              MR. SHRAIBERG:  Neither the debtors, nor

2    purchaser have engaged in any conduct that would cause or

3    permit the agreement to be avoided under Bankruptcy Code

4    Section 363(n).  The debtors and purchaser were

5    represented by their own respective counsel and other

6    advisors during these arm's length negotiations in

7    connection with the agreement and the sale, and no party

8    has objected to this sale, the agreement, on the grounds

9    of fraud or collusion.  And, accordingly, we're going to

10   be requesting a full 363(n) finding in any proposed order.

11             With regard to this offer being the highest

12   and best offer, the agreement -- it is the debtor's

13   business judgment that the agreement constitutes the

14   highest and best offer for the purchased assets and will

15   provide greater overall value for the debtor's estates

16   than would be provided by any other available alternative.

17   Specifically, it is important to note that this case is

18   currently administratively insolvent.

19             Just from a 30,000-foot analysis, there are

20   outstanding -- or there is work in progress that isn't

21   subject yet to a fee application, but my firm has incurred

22   significant fees.  The debtor's employees have -- the

23   debtor has missed numerous payrolls post-petition

24   throughout this case.  There is a -- there are two DIP

25   facilities that were lent on an unsecured basis, one for

1   $200,000 and another for $50,000, and none of those debts

2   have been paid.  The debtor does not have use of cash

3   collateral.

4                    The debtor's determination that the

5   agreement constitutes the highest and best offer for the

6   purchased assets, we believe, constitutes a valid and

7   sound exercise of the debtor's business judgment.  The

8   debtors also contend that the agreement represents a fair

9   and reasonable offer to purchase the purchased assets

10  under the circumstances of this bankruptcy case.  No other

11  entity or group of entities has offered to purchase the

12  purchased assets for greater overall value to the debtor's

13  estates than this purchaser.

14                    Approval of the sale motion and the

15  agreement and the consummation of the transactions, the

16  debtor contends, are in the best interest of the debtors'

17  Chapter 11 estates, their creditors, and other parties in

18  interest, and the debtors contend that they've

19  demonstrated compelling circumstances and a good,

20  sufficient, and sound business purpose and justification

21  for the sale prior to and outside of the plan of

22  reorganization.

23                    The most important component of this offer

24  is, this would be a sale for -- that would continue the

25  debtor as a going concern, and the employees of this

1    company, who have suffered greatly -- they went through

2    Christmas without a paycheck -- will now have the

3    opportunity to continue working, and we believe that the

4    purchaser, though not obligated, is going to continue to

5    make due with regard to at least a portion of the wages

6    that the employees did not receive during this timeframe.

7              The debtor will be seeking a finding that

8    there is no fraudulent transfer or merger as a result of

9    the sale.  The debtor will be seeking in the order a

10   finding that the transfer is valid and done pursuant to

11   Section 363 of the Bankruptcy Code.  The debtor will be

12   seeking in the order the traditional language that the

13   assets are being transferred free and clear of all liens,

14   claims, and encumbrances; a finding that Section 363(f) is

15   satisfied; a finding that there are compelling

16   circumstances for an immediate sale, and that any and all

17   objections, whether formal or informal, have been

18   overruled.

19             With regard to Mr. Zinkler's client, the

20   debtor is not seeking that his assets are sold free and

21   clear of his lien, that his assets would, in fact, be

22   carved out.  The purchaser is going to make a

23   determination of which assets it wants -- or which

24   contracts and leases, unexpired leases, it desires to

25   assume, and that will be part of a separate motion.

1              With regard to Docket Entry 185, the debtor

2    included a copy of the negotiated term sheet.  From

3    speaking with Ms. Fineman before the hearing, there is one

4    issue that we wanted to bring to the attention that the

5    Court may not be able to approve today.  The debtor would

6    be seeking approval of it, but we might need to come up

7    with a mechanism to handle it.  And that is specifically

8    found on page 21 of 21.  It is the final item in what is

9    called the Clarity Term Sheet, specifically, that --

10             THE COURT:  Item 14?

11             MR. SHRAIBERG:  Yes.

12             -- that the secured creditor would have an

13   allowed claim for -- it's over -- a little over $13

14   million.  The debtor does not object to this amount.

15   However, we're just wanting to bring to the Court's

16   attention that this provision is in the term sheet and

17   wanted to make sure that there was no objection with

18   regard to that one clause.

19             THE COURT:  Okay.  Why would you -- so

20   that -- why would you suggest that might not be subject to

21   approval today?  I'm trying to understand why that's the

22   case.

23             MR. SHRAIBERG:  If there's a notice issue,

24   because the original motion, other than as amended, did

25   not include a provision that would have an allowed claim.

Page 14

1    I believe -- actually, I take that back.  The cash

2    collateral orders have all been on an interim basis, so I

3    don't know that there was ever a deadline for parties to

4    object to their claim.  The debtor has done its due

5    diligence and does not object to this amount.  However,

6    this is -- it's been one week since -- actually, not even.

7    I think Docket Entry 185 was filed February 14th.  We just

8    wanted to bring it to the Court's attention that that's --

9    but it is a term within -- a negotiated term that was one

10   of the reasons why Brevet gave their approval and is not

11   objecting to today's sale.

12              I believe that concludes my presentation and

13   I'm available to answer any questions.

14              THE COURT:  At the beginning you said that

15   the potential upside to the estate was $300,000.  It might

16   be useful to explain that on the record.

17              MR. SHRAIBERG:  Sure.

18              Three hundred and fifty thousand dollars

19   will be paid from the cash that is -- that the debtor is

20   currently sitting on at closing for debtors' legal fees.

21   And then the estate -- one of the issues that Mr. Taylor

22   was referencing earlier with regard to this proposed order

23   that was filed does not reference the fact that the debtor

24   is transferring its AR to Brevet at closing of this sale.

25   That AR is going to have a carveout of ten -- or, excuse

1   me, five percent every month until capped at $300,000 from

2   their collections of what is a defined term of the

3   COVID/AR.  The AR has always been divided into two

4   different tranches.  One is traditional AR from the

5   debtor's operations and two is the COVID/AR that various

6   insurance companies rejected claims around the time of the

7   COVID pandemic.

8                    This AR is the subject of the application to

9   employ the collection company that continuously was being

10  rolled.  Its face value is very high, anywhere between 20

11  and $25 million.  What the actual value is we've heard

12  many different ranges depending upon which company is

13  looking to collect those receivables, and through this

14  deal the estate will have a reversionary interest of five

15  percent of the collections per month up to $300,000.

16                   THE COURT:  Okay.  I must have missed

17  something.  My notes don't reflect this at all.

18                   So, in fact, when you started -- I'm gonna

19  back up one.  You said --

20                   MR. SHRAIBERG:  Sure.

21                   THE COURT:  -- the estate gets $50,000, my

22  notes say $40,000.  So I'm very confused.

23                   MR. SHRAIBERG:  Sure.  Give me one second.

24                   MR. BERGER:  Your Honor --

25                   MR. TAYLOR:  Judge --

```
 1              MR. BERGER:  -- may I address that?

 2              THE COURT:  Well, let's go one at a time.

 3   Should I -- Mr. Berger?

 4              MR. BERGER:  Yes, Judge, Eyal Berger, again

 5   on behalf of the proposed purchaser, Clarity Lab Group,

 6   LLC.

 7              There were many moving parts that were being

 8   negotiated, Your Honor, and basically to overcome certain

 9   objections, the resolution of those objections was to

10   basically revise the term sheet that is at Docket Entry

11   185 to add these new terms.  And so that revised term

12   sheet I don't believe was actually filed with the Court

13   because this was literally done at the 13th hour, I'll

14   describe that in that regards.  And so that will be

15   attached to the proposal.

16              THE COURT:  I know you're new to this case,

17   but that's completely unsurprising.

18              MR. BERGER:  Yeah, so that -- because of the

19   late hour, I don't believe that that is actually on file,

20   that new term that Mr. Shraiberg described.

21              Additionally, Your Honor, I rose at the very

22   beginning of this and told you that the name changed.

23   That's another thing that will be in the revised term

24   sheet that my purchaser will be called Clarity Lab Group,

25   LLC, as opposed to the name that you see in there.
```

```
1                    And then one last clarification, because I
2    think the purchase price on the carveout to the estate
3    matters in this case, my client will also be paying a
4    $40,000 carveout.  That's already part of the original
5    term sheet.  I think that Mr. Shraiberg is just skipping
6    that portion of it.  We were funding $20,000 at closing
7    and then an additional $20,000 over --
8                    THE COURT:  Right.
9                    MR. BERGER:  -- four months.  So that's an
10   additional carveout that is being put back into.
11                   THE COURT:  So the $40,000, 20 upfront, plus
12   monthly installments, that's still in the deal?
13                   MR. BERGER:  That's still in the deal.
14                   THE COURT:  Okay.
15                   MR. BERGER:  And then there's an additional
16   50, Your Honor, so that brings you up to 90, and then
17   there's an additional 300,000.
18                   THE COURT:  Right, but I wanna just -- I
19   want to understand what the deal is, because so far I
20   haven't heard -- I hadn't heard that they were changed.
21   That's why I asked, why I said 300 and it's 350 that
22   Mr. Shraiberg said.  I'm trying to figure out how he got
23   there.
24                   All right.  So it was the 40,000 is --
25   that's actually coming from the buyer --
```

```
 1                    MR. BERGER:  Correct.
 2                    THE COURT:  -- that was already there, and
 3   then I had an additional four percent of gross revenues
 4   the buyer pays to the lender for three years.
 5                    MR. BERGER:  That's still there.
 6                    THE COURT:  That's still there.
 7                    And then the remainder of the purchase price
 8   at the end.
 9                    MR. BERGER:  Correct.  So those terms did
10   not change.  The material change, Judge, dealt with the
11   COVID receivables and the carveout back to the estate from
12   the lender.  That's the material term that changed.
13                    THE COURT:  Okay.  Good.
14                    Now I'm going to go over to Mr. Shraiberg,
15   before I lose track of my questions.
16                    The COVID/AR is part of the pre-petition
17   security, the collateral, yes?
18                    MR. SHRAIBERG:  Correct, yes.
19                    THE COURT:  Okay.  So that's not a new
20   transfer.
21                    And tell me about how that is dealt with
22   different from what was in the second motion.
23                    MR. SHRAIBERG:  Sure.
24                    Now Brevet is paying the estate five percent
25   of their net proceeds up to $300,000.  So it's on the
```

1    first $6 million of net proceeds that they receive.

2              THE COURT:  All right.  And then after that,

3    is there still the if-net-collections-exceed-ten-million

4    provision?

5              MR. SHRAIBERG:  No.  In exchange for the

6    $300,000, that is being removed.  And to shed some light

7    on that, this estate never believed that it was very

8    realistic that there would ever be net $10 million.

9              THE COURT:  All right.  So that really

10   doesn't matter.

11             And then the prior provision was $50,000 in

12   monthly installments beginning August 1, payments of ten

13   percent of collections or 5K, whichever was larger.

14             So the diff --

15             MR. SHRAIBERG:  Yes.

16             THE COURT:  Now it's a fixed percentage.

17             MR. SHRAIBERG:  Correct, Your Honor.  And

18   the -- I believe -- no, it's in there properly.

19             Also there's -- it's not just 40,000 from

20   the purchaser at closing.  It's also 50,000 from cash

21   collateral, from Brevet's cash collateral.  So it totals

22   $90,000.

23             THE COURT:  And that's a term that did not

24   exist previously, the $50,000?

25             MR. SHRAIBERG:  I think it may have.  I

1  think the timing of that payment may not have been at

2  closing.

3              MR. TAYLOR:  Your Honor, if I could jump in

4  here?

5              THE COURT:  Yeah.

6              MR. TAYLOR:  Sorry.  Josh Taylor.

7              The 50,000 from the lender is at closing,

8  and that's in point five of the term sheet, and that's

9  been there since the draft was filed.  The only change on

10 any of this was in paragraph 11, where originally it was

11 going to be the 50,000 based on a percentage with five

12 percent -- or 5,000 or ten percent until the full 50,000

13 was paid and the reversionary over ten, and that's all

14 been taken out.  And now it's just a straight ten percent

15 of -- or, sorry, five percent of net collections on the

16 first six million.

17             THE COURT:  Right, just a moment.

18             MR. TAYLOR:  But the --

19             THE COURT:  Just a moment.

20             MR. TAYLOR:  Yep.

21             THE COURT:  All right.  Go ahead.

22             MR. TAYLOR:  So, yes, the 50,000 from Brevet

23 has always been there, and I believe it's paragraph 5.

24 The purchaser, Clarity Lab Group, I believe is the new

25 name, is also paying 40,000, 20 plus the monthlies.  And

Page 21

1    then paragraph 11 has been revised so that instead of any

2    of the 50,000 or any specific U.S. trustee fees or

3    anything, it's now just a straight five percent off net

4    collections on the first six million, which would --

5    assuming we hit six million, that's your $300,000 right

6    there.

7                    THE COURT:  All right.  So why did you say

8    three-fifty, Mr. Shraiberg?

9                    Isn't it three-ninety?

10                   MR. SHRAIBERG:  It's three-ninety.  I was

11   counting three-fifty from the secured creditors'

12   collateral, but it is $390,000.

13                   THE COURT:  And what is the debtor's view as

14   to the potential collection on the COVID/AR?

15                   Is someone doing -- I assume an outside

16   party will be doing this, in spite of the --

17                   MR. SHRAIBERG:  That is correct.

18                   THE COURT:  -- fact that it had a motion to

19   hire somebody for six months running every two weeks.

20                   All right.  What --

21                   MR. SHRAIBERG:  That is correct, Your Honor.

22                   THE COURT:  What else do I need to know,

23   Mr. Shraiberg?

24                   MR. SHRAIBERG:  One, the second component

25   that was not included, the $300,000 to the estate, I do

1    want to say is a result of Ms. Feinman's unofficial

2    objection or warning that she would be objecting and

3    wanted to thank the U.S. trustee for their participation.

4    It helped with the negotiations.

5                    THE COURT:  All right.  Who should I hear

6    from next?

7                    MR. TAYLOR:  Judge, just --

8                    THE COURT:  Maybe the buyer?

9                    Okay.  Mr. Berger?

10                   MR. BERGER:  Yes, Judge, because he wasn't

11   on originally, I just wanted to introduce the

12   representative for the purchaser, Mr. Bamberger,

13   B-A-M-B-E-R-G-E-R, and I would proffer on his behalf that

14   we did extensively negotiate this deal over the course of

15   a month through counsel and through heavy participation by

16   purchaser's representatives.  There were multiple drafts

17   and the consideration that you see in this final term

18   sheet actually went up over the course of those

19   negotiations to support the proffer that this was an

20   arm's-length transaction, Your Honor.

21                   THE COURT:  Thank you.  And good morning,

22   Mr. Bamberger.

23                   MR. BAMBERGER:  Good morning, Your Honor.

24                   THE COURT:  All right.  Mr. Taylor?

25                   MR. TAYLOR:  Yes, Your Honor, Josh Taylor

1    again for FCS Advisors.

2                    Mr. Colon is here on behalf of FCS Advisors.

3    As indicated, this has been a lengthy negotiation amongst

4    all the parties, the purchaser, the debtor, my client.

5    This has gone -- the terms have changed numerous times.

6    This has been clearly an arm's-length negotiation.

7                    I do want to point out to your Court,

8    Mr. Shraiberg's recitation or going through the order was

9    very focused on the purchaser side of things, but we

10   expect that the order would have similar findings

11   regarding the transactions involving the lender here,

12   as --

13                   THE COURT:  Can you be more specific about

14   what you're talking about?  Because I will not be making a

15   363(m) finding with regard to your client.

16                   MR. TAYLOR:  Okay.

17                   THE COURT:  So what do you mean?  I want

18   specific requests for findings on the record.

19                   MR. TAYLOR:  Yeah.

20                   THE COURT:  Let me give you a little

21   background about my feeling about this case.  Let me ask

22   you a basic question, Mr. Taylor.

23                   If the debtors were not operating right now,

24   would this transaction be before the Court?

25                   MR. TAYLOR:  If the debtors were not

Page 24

1   operating?  Your Honor, we've been trying to get a deal --

2                    THE COURT:  Ah, that's not the question I

3   asked.

4                    If the debtors were not operating, would

5   this transaction be before the Court?

6                    MR. TAYLOR:  Your Honor, if the debtors were

7   not operating, my guess is that we would be foreclosing on

8   these assets --

9                    THE COURT:  Great --

10                   MR. TAYLOR:  -- and there would be --

11                   THE COURT:  -- you just answered my

12  question.

13                   So why did your client not facilitate the

14  payment of the salaries of people who are maintaining the

15  value of their collateral?

16                   MR. TAYLOR:  Your Honor, we have been

17  approving payroll when we can.  We have not been provided

18  information, and we have not been -- moving this process

19  along with delays by the debtor in that process.  And that

20  is why we have not been able to approve certain payments.

21                   THE COURT:  The primary thing I don't like

22  about this deal is that I'm being asked to keep open a

23  case for two years, primarily, Mr. Shraiberg's going to

24  disagree with this, primarily for the benefit of the

25  secured creditor.  And this is a case where the secured

Page 25

1   creditor has bled the debtor and put it right to the edge

2   of death, and you and your client are lucky that the

3   debtors' employees are still there maintaining the value

4   of your collateral.  And now you're about to ask me for

5   findings that I likely am not going to approve.

6                    So let me know what your findings are that

7   you'd like to include in this order.

8                    MR. TAYLOR:  Certainly.  Let me start

9   looking at my document.

10                   THE COURT:  I want you to tell me every

11  single comment you will have to this order now.

12                   MR. TAYLOR:  Your Honor, we're going to be

13  requesting that there are findings that the transfer of

14  the assets to the lender is the best option here, given

15  the considerations of where the case is.

16                   THE COURT:  You mean the COVID/AR?

17                   MR. TAYLOR:  The COVID/AR, as well as there

18  is also cash and other current AR that is being

19  transferred to the lender.

20                   THE COURT:  Next.

21                   MR. TAYLOR:  The terms and conditions set

22  forth in the agreement, which includes all the

23  transactions are fair, adequate, and reasonable, including

24  the consideration from the lender, which includes the

25  $50,000, plus the five percent on net collections.

Page 26

1           THE COURT:  What would the property, the

2    assets, be worth if you foreclosed?

3           MR. TAYLOR:  Your Honor, I do not know the

4    answer to that.

5           THE COURT:  That's impressive.

6           MR. TAYLOR:  I --

7           THE COURT:  If you don't know the answer to

8    that, then how was the deal negotiated?  I'd love to know

9    what the background of your negotiation was.

10          The background of your negotiation is always

11   the backstop of foreclosure and the value at foreclosure.

12   So given your experience in this case, and the quality of

13   your presentation, I find it very unlikely you don't know

14   that answer.  Fifty thousand dollars is a small price to

15   pay for getting two years of assistance from the

16   Bankruptcy Court to get as much as you can out of your

17   collateral.

18          But next, what's the next?

19          Go ahead.  Next.

20          MR. TAYLOR:  That the lender is not an

21   insider and that no officer, director, manager, or other

22   insider of the debtors holds an interest in the lender;

23   that these terms were negotiated in good faith and at

24   arm's length; and that the lender -- well, I guess you

25   have said you are not going to give us the good faith

Page 27

```
 1   buyer provision.
 2                  THE COURT:  You're not a buyer.  So I'm not
 3   giving you the 363(m) finding.
 4                  MR. TAYLOR:  Your Honor, I -- I -- I
 5   disagree --
 6                  THE COURT:  I've already told you my view on
 7   that.  Arguing is not going to help.
 8                  MR. TAYLOR:  Okay.  Thank you, Your honor.
 9                  THE COURT:  Those are all of your comments.
10                  MR. TAYLOR:  No, no, Your Honor.  I -- I --
11   I am still continuing through.
12                  That the debtors, nor lender have engaged in
13   conduct that could cause or permit the agreement to be
14   avoided under 363(n); that they were -- that each of the
15   parties was represented by their own counsel during an
16   arm's length negotiation in connection with the agreement;
17   that the transactions in the agreement would provide a
18   greater overall value for the debtors' estate than would
19   be provided by an alternative at this point; that the
20   agreement, including the transactions with the lender,
21   constitute the highest and best offer for the assets; that
22   this is a fair and reasonable offer; that the
23   consideration provided by the lender is -- is fair and
24   reasonable and the highest and best offer for the assets.
25                  THE COURT:  What -- what consideration?
```

1              MR. TAYLOR:  The $50,000 upfront, as well as

2      the potential five percent from net collections on the

3      COVID/AR, um, and that this constitutes reasonably

4      equivalent value, and there's not a fraudulent transfer

5      happening here; that the lender is not a continuation of

6      the debtors' estates, there's no continuity of enterprise,

7      um, no -- uh, continuation, not a successor in interest --

8      (clears throat), sorry -- um, that the assets being

9      transferred to the lender would vest in the lender free

10     and clear of any interests, claims, or liens on them, and

11     that any of those would transfer to the amounts that the

12     debtor will be receiving as a result of this agreement,

13     and that the lender would not have entered into this

14     without the transfer being completely free and clear of

15     all of those such interests, including any claims of any

16     other party, or, you know, any claims with respect to a

17     labor employment agreement, any mortgages, deeds of trust,

18     or security interest, any environmental worker, worker --

19     employee, workers compensation, or other similar claims,

20     any claims under ERISA, the Fair Labor Standards Act,

21     Warren -- um, and any other employee related acts or

22     compensation laws, um, any claims or liens arising under

23     environmental laws, a finding that the debtors can

24     transfer these assets free and clear of the interests --

25     um, sorry, Your Honor, I am scrolling as quickly as I can.

1                THE COURT:  No, I have plenty of time.

2                What I don't want is to hear after this

3    hearing that there's been substantial negotiation of an

4    order on issues not presented to the Court and that I need

5    another hearing because there are issues that remain to be

6    resolved.  And every time I've had a hearing in this case,

7    everything's been close and nothing has happened.  And my

8    experience with 16 years as Mr. Shraiberg -- with

9    Mr. Shraiberg acting as debtor's counsel, this is the one

10   case I can think of in 16 years that that's happened, so

11   I'm confident it's not him.  And I want to know what all

12   of your comments are.  I'm willing to sit here for the

13   next hour if you have more comments.

14                MR. TAYLOR:  Understand, Your Honor.

15                THE COURT:  I have to tell you, I'm likely

16   to take a break in a little while, because in my view, the

17   lender can do better.  And I'm going to encourage you to

18   consider whether or not you can front-load some of the

19   amounts that you have agreed to pay the estate over time.

20                You are asking me to keep this case open for

21   two years for your benefit, primarily.  You have bled the

22   debtor to the point of death, and now you want to retain

23   bankruptcy jurisdiction to protect a deal that is to a

24   great extent for the benefit of the secured creditor.

25   That's what this whole case has been about.

1    So what other comments do you have to this

2    order?

3    MR. TAYLOR:  Yes, Your Honor.  We would

4    include a provision that allows the lender's claim to be

5    an allowed first priority secured claim against each of

6    the debtors and that that would not be subject to further

7    challenge, that is part of the deal that's been

8    negotiated.

9    THE COURT:  I think that's already there.

10    MR. TAYLOR:  I don't believe it's in the

11    draft of the order.  It's in the term sheet.  So it's a

12    provision that needs to be added to the order.  There

13    would be a release of the -- by the debtors of the lender

14    of claims against -- by the debtors or those claiming on

15    behalf or through them, again, of any claims against the

16    lender, other than with respect to the amounts that would

17    be owed under this deal going forward, and that that

18    release would include a waiver of any unknown claims.

19    There will be a covenant not to sue based on that.

20    Again, there will be a provision regarding

21    the authorization to transfer the assets to the lender

22    free and clear of all interests and directions by any

23    party who has an interest in those assets at the moment to

24    release those assets to the lender and release their

25    claims and interests, and that the transfer would provide

1   the lender with legal valid and marketable title to the

2   assets that are being transferred, so that the lender can

3   deal with them as appropriate.

4                    There would be what I would consider a

5   standard routine provision that would authorize the lender

6   to make a filing in any recording office where any lien

7   might exist on any of these assets to release that lien

8   based on the entry of the order, and a standard provision

9   canceling the interests of third parties in the assets

10  being transferred to the lender.

11                   There would be a provision providing that

12  there is no successor liability to the lender, uh, based

13  on this, under any relevant provision.  This would be a

14  provision that again mirrors what is already in the order

15  with respect to the purchaser.  There would be a similar

16  mirrored provision about the action -- ah, no actions

17  being brought against the lender and any such actions

18  being enjoined.

19                   And I believe that largely covers it, other

20  than, you know, generally implementing the agreement as

21  negotiated between the three parties.

22                   THE COURT:  Mr. Shraiberg, did you hear

23  anything objectionable?

24                   MR. SHRAIBERG:  No, Your Honor.

25                   THE COURT:  Mr. Berger?

1              MR. BERGER:  No, your honor.

2              THE COURT:  All right.  I'd like to hear any

3    other input on the sale, and then I want to talk to you

4    all about taking a break.

5              Ms. Feinman.

6              MS. FEINMAN:  Yes.  Good morning, your

7    honor.  Heidi Feinman for the U.S. Trustee.  I just have

8    two comments.

9              One of them that Mr. Shraiberg raised about

10   paragraph 14 on the allowance of the claim of Brevet.

11   Brevet has not yet filed a proof of claim and has not

12   asked for an extension, continued extensions of time to

13   file a proof of claim.

14             THE COURT:  Why -- why is that, Mr. Taylor?

15             I mean, I've had this case forever.

16             Couldn't you have filed a proof of claim?

17             MR. TAYLOR:  Your Honor, we've been focused

18   on negotiating with the debtor as a deal that would

19   resolve all claims, uh, both directions and all -- um, so

20   we've been focused on that, and that's why we've

21   frequently asked for extensions of time.

22             THE COURT:  Well, you came up with a very

23   exact number.  One would assume that you have backup for

24   that that you presented to the debtors, because

25   Mr. Shraiberg told me the debtors did not believe they

1   could object to that, and given my experience with

2   Mr. Shraiberg, it seems unlikely you gave him nothing to

3   support that.

4               So why not file a proof of claim in this

5   case?

6               MR. TAYLOR:  Your Honor, the number is a

7   number that -- it actually is not the full amount that our

8   client is likely owed.  It is the amount that we

9   determined was owed, and we used that number in the

10  objection to the DIP financing and cash collateral early

11  in the case.  It was filed back in September, and as noted

12  there, there were additional amounts owed for legal fees

13  and all, as well as additional fees that have accrued

14  during this case.  So that number is actually a lower

15  number than we would be owed if we filed the claim in the

16  full amount.

17              THE COURT:  In the context of this case,

18  could it possibly matter?  I mean --

19              MR. TAYLOR:  Your Honor, I --

20              THE COURT:  So you file a proof of claim,

21  and you say, "As of this date our claim is X," and "We

22  reserve the right to ask for more legal fees, because we

23  believe we're somehow going to be entitled to

24  post-petition legal fees in a case that's administratively

25  insolvent."

1                        Why are you wasting my time with that

2        argument?

3                        So there's been no proof of claim and yet --

4        and so no one has any notice of the underlying basis for

5        the claim, but you'd like it allowed as part of this deal.

6                        MR. TAYLOR:  Yes, Your Honor, that is part

7        of the negotiation that has occurred here with the debtors

8        and part of the reason that our client has agreed to

9        support this deal and move forward in this matter.

10                       THE COURT:  Well, I can see why they support

11       the deal.

12                       All right.  Ms. Feinman, back to you.

13                       So you would object to the sale on -- if it

14       is a necessary component to include the allowance of the

15       secured claim.

16                       MS. FEINMAN:  And, Your Honor, my concern

17       is, is that it's preventing anybody from objecting to the

18       claim.  I understand that the debtor can agree that the

19       claim might be a valid claim, but I don't know what other

20       creditors are existing who may want to object.  There's no

21       notice.  And so I'm very concerned about that.

22                       I mean, ultimately, maybe this case is, as

23       you said, so upsidedown and backwards that it won't

24       matter, but we shouldn't treat any case differently than

25       any other case.  So that's the first concern I have, Your

1   Honor.

2                    The second concern, Your Honor, lies within

3   the proposed order that Mr. Shraiberg has referred to, and

4   that is the very last paragraph -- actually, no, it's

5   paragraph 26.  I apologize.

6                    THE COURT:  Yeah, let me pull that up so I

7   have it in front of me.

8                    MS. FEINMAN:  Yeah, and I think I've

9   misplaced mine as well.

10                    So paragraph 26 provides that if the sale --

11   or the sale is final -- it's the last paragraph.  It's

12   effective immediately, not subject to review.  That was

13   not asked for in the motion.  I just want to raise that to

14   the Court's attention that, you know, we should -- there's

15   been no request to, in the motion, and no notice that the

16   parties were going to ask the Court to make this a final

17   and non-appealable order.

18                    So those are my two issues, Your Honor.

19   Thank you.

20                    THE COURT:  Mr. Shraiberg, do you want to

21   address those.

22                    MR. SHRAIBERG:  In the break that the Court

23   alluded to, it's something I can discuss with Mr. Berger.

24                    The issue is the urgency of we want this

25   deal to close as soon as possible.  Mr. Bamberger and his

```
 1   partners are intending on operating seamlessly, which will
 2   start to get the employees paid.  That is the reason for
 3   the urgency of closing and closing immediately.
 4                   THE COURT:  Understood.
 5                   Mr. Berger, can you tell me about the
 6   urgency of the deal from your client's point of view,
 7   what's literally happening on the ground, and how you see
 8   this moving forward?
 9                   MR. BERGER:  Yes.  The issue, Your Honor,
10   and if we need to, we can have Mr. Bamberger provide more
11   input, as Mr. Shraiberg said, these employees have not
12   been paid.  There's approximately 23 of them.  My client
13   has to, obviously, interview them.  The due diligence
14   period here has been extremely narrow, and when you add in
15   the holiday period, so it -- there is a high likelihood
16   that if you extend closing, Judge, to a 14-day period,
17   there won't be employees, because --
18                   THE COURT:  How long has it been since
19   they've been paid?
20                   MR. BERGER:  I believe two payrolls, but
21   I'll let Mr. Shraiberg confirm.
22                   THE COURT:  Is that a month, Mr. Shraiberg?
23                   MR. SHRAIBERG:  That is a month, but there's
24   a but.  In the last hearing, we were approved for $80,000,
25   which did make one payroll that they received when CLS --
```

1    CLS is four payrolls behind.

2                    UNIDENTIFIED SPEAKER:  And now we're up

3    to -- as you know that payroll coming up again on the

4    22nd, which will be Tuesday.

5                    MR. SHRAIBERG:  And next Tuesday is the next

6    payroll.

7                    UNIDENTIFIED SPEAKER:  So now it will be a

8    total behind on two for CD and will be five behind CLS.

9                    MR. SHRAIBERG:  So if that's not paid, the

10   debtor would be behind two for Clarity Diagnostics and

11   five for Clarity Labs.

12                   THE COURT:  And a payroll is what period, a

13   week or two weeks, two weeks?

14                   MR. SHRAIBERG:  Two weeks.

15                   UNIDENTIFIED SPEAKER:  Two weeks.

16                   THE COURT:  All right.  Five payrolls?

17                   UNIDENTIFIED SPEAKER:  Yeah.

18                   THE COURT:  Ten weeks.  Ten weeks.

19                   UNIDENTIFIED SPEAKER:  Yes, sir.

20                   THE COURT:  Okay.  My reaction to that is

21   wow.

22                   UNIDENTIFIED SPEAKER:  It is a wow.

23                   THE COURT:  Yeah.

24                   Okay.  Anything else you'd like me to know?

25                   MR. BERGER:  So that's the urgency, Judge,

Page 38

1    and my clients will be flying in, and they'll be here on

2    Sunday to basically do everything in their power to make

3    closing happen as quickly as possible.  So that's the

4    urgency.

5                    THE COURT:  That's the reason for the

6    request for waiver of the stay provisions.

7                    MR. BERGER:  Yes, sir.

8                    THE COURT:  Understood.

9                    How hopeful are you after hearing

10   Mr. Taylor's presentation that I would actually be -- if I

11   were to approve a sale today that I would have an order

12   today?

13                   I have to tell you my hopefulness level is

14   at ten percent.

15                   MR. BERGER:  Well, Judge, given my

16   experience in negotiating the term sheet, I -- I'm with --

17   I'm with the Court on that, that that'll be difficult.

18                   I think the most probable way to get a sale

19   order entered today, Judge, again, this is just from my

20   view and we can ask the other's input, is -- what I would

21   recommend, Judge, is to actually have the redline filed

22   with the Court, in a break to allow us to do that,

23   because --

24                   THE COURT:  That's exactly what I'm

25   thinking.

Page 39

1              MR. BERGER:  Yeah.  If we don't do that,

2    Judge, then I agree with you, it's highly improbable.

3              THE COURT:  Understood.

4              All right.  What I'm going to propose to

5    everyone, I want to hear your input on this, is that I

6    want a redline order filed by one o'clock today, and I

7    will reconvene at two.

8              I see no reason that the comments that

9    Mr. Taylor just made, which all sound to be boilerplate

10   that you can take from other documents, can't be

11   negotiated in two hours.  I don't expect you to eat.  I

12   want an order at one o'clock.  It's a proposed order

13   that's agreed by everyone.  If any component of it is not

14   agreed by everyone, then the deal will not be approved

15   today.

16             In addition, I want to make it clear that

17   I'm very concerned about the deal that the secured

18   creditor is getting under the circumstances.  I think that

19   the amount of money paid upfront in this deal is woefully

20   inadequate.  And if you want all those provisions,

21   Mr. Taylor, I expect to see a slightly different deal come

22   around at one o'clock.

23             I was inspired by my colleague in Houston

24   who recently turned down a sale when he told the parties

25   you can do better and sent them out to negotiate, and I

1    think you can do better.  And so I expect you to do that

2    by one o'clock, and we'll reconvene at two o'clock.

3                    Any questions?

4                    MR. BERGER:  Judge, may I be excused and

5    allowed to reappear via Zoom, so --

6                    THE COURT:  Absolutely.  Yes, of course.

7                    All right.  Thank you all.  See you at two.

8                    MR. SHRAIBERG:  Thank you, Your Honor.

9                    MR. TAYLOR:  Thank you.

10                    (A recess was taken at 10:54 a.m. to 2:24

11   p.m., and the following proceedings were had:)

12                    THE COURT:  All right.  Welcome back

13   everyone.  Let's just do a little roll call, so we have

14   all the appearances back.

15                    Mr. Taylor.

16                    MR. TAYLOR:  Yes, Your Honor.  Joshua Taylor

17   from Steptoe on behalf of FCS Advisors.  My colleague

18   Jeffrey Reisner is also on the phone, as is Mr. Colon, our

19   client representative, and Mr. Avron, our local counsel.

20                    THE COURT:  Thank you.

21                    Good afternoon everyone.

22                    Mr. Shraiberg.

23                    MR. SHRAIBERG:  Thank you, Your Honor.  Brad

24   Shraiberg on behalf of the debtors, and once again I'm

25   joined by debtors' management, Mr. Rick Simpson and

Page 41

1    Mr. Warren Wright.

2                    THE COURT:  Mr. Berger.

3                    MR. BERGER:  Good afternoon, Your Honor.

4    Eyal Berger, B-E-R-G-E-R, on behalf of the purchaser,

5    Clarity Lab Group, LLC, and I am joined by the purchaser's

6    representative, Mr. Bamberger, B-A-M-B-E-R-G-E-R.

7                    THE COURT:  Thank you.

8                    Ms. Feinman.

9                    MS. FEINMAN:  Heidi Feinman for the U.S.

10   Trustee.

11                   THE COURT:  Mr. Zinkler.

12                   MR. ZINKLER:  Afternoon, Your Honor.  George

13   Zinkler on behalf of Greenwoods Equipment Finance, LLC.

14                   THE COURT:  Have I left anyone out?  I don't

15   think so.

16                   Mr. Shraiberg, so -- I have reviewed the

17   redline proposed order at ECF 189 -- so what has happened

18   since this morning?

19                   MR. SHRAIBERG:  I apologize.  You broke up.

20                   Can you repeat the question?

21                   THE COURT:  That's unfortunate.

22                   I said I had read the redline proposed

23   order, which was filed at ECF 189, and could you let me

24   know what's happened since this morning?

25                   MR. SHRAIBERG:  Yes, Your Honor, and thank

Page 42

1    you.

2              The parties got together after reviewing the

3    proposed redlines, continued to negotiate, and Brevet has

4    made some additional concessions.  And if it's okay, Your

5    Honor, I would like to turn it over to Mr. Taylor, who

6    will walk through those.

7              THE COURT:  Sure, and then I do have some

8    questions on the order as well.

9              MR. SHRAIBERG:  Sure.

10             THE COURT:  Mr. Taylor.

11             MR. TAYLOR:  Yes, Your Honor.  So there have

12   been a number of key changes.  We believe we now have a

13   fully agreed upon consensual deal amongst the parties that

14   are here in court and that this has been materially

15   enhanced this morning.

16             First, there is an additional $50,000 that

17   would be paid at closing.  At the request of the debtor

18   and the U.S. trustee, with the U.S. trustee's approval,

19   that would be designated first to make some past due

20   payroll payments.  That's obviously additional funding to

21   the debtor upfront.

22             There has also been a change to the

23   percentage on collections.  It has gone up to 7-1/2%.

24   However, it's now on the first five million instead of six

25   million.  It is a change from $300,000, potentially, to

Page 43

1    $375,000, but it is coming quicker to the estate from the

2    earlier funds that are received.  I would note that the

3    original five percent is what was requested and asked for

4    by the debtor and the U.S. trustee and had been agreed to,

5    but we have increased that in light of Your Honor's

6    concerns.

7                    Additionally, with respect to the claim

8    issue that was raised this morning by Ms. Feinman, we've

9    agreed that instead -- and the debtor has agreed to this,

10   having reviewed our claim, that they would amend the

11   schedules to reflect that the FCS claim is undisputed,

12   noncontingent, and liquidated in the amount of about

13   $13.16 million.  The exact number is in the order and that

14   that claim would not be subject to further challenge by

15   the debtor or a successor trustee to the debtor, and that

16   the schedules would not be amended or altered in any way

17   to adjust that reflection of the claim by the debtor or a

18   successor trustee.  So we believe that should address the

19   issue.

20                    I do want to express, this is a deal that

21   originally came to us from the debtor.  The debtor is the

22   one that wanted it.  It's true that we introduced the

23   buyer to the debtor, but that's because the buyer came to

24   us initially, but we had them talk to the debtor first.

25   The debtor brought this deal to us.  It's not a deal that

1   we have forced on them, but the deal that they want and

2   believe produces the best result here.

3                    We have approved a number of payrolls

4   throughout this case.  Most recently, I believe, some

5   payroll was made earlier this week.  There have been

6   issues with reports and getting information, and that's

7   part of the reason not everything has been approved as has

8   happened in the past.

9                    I want to emphasize, Your Honor, that the

10  lender here is leaving behind significant amounts.  There

11  is the $50,000 for the debtor's counsel.  There is the

12  $50,000 additional for payroll.  There is the, you know,

13  7-1/2 million off the five million of collections, off the

14  net collections.  That's a, potential, $375,000 more.

15  There's additionally another 300,000 from the initial cash

16  and current receivables that the purchaser has access to

17  and can use to pay things, like, any rent that might be

18  ordered by the Court or any other amounts that might be

19  ordered by the Court that need to be paid.  So there's

20  additional amounts there.

21                    The lender is releasing the liens on all the

22  assets that the purchaser is acquiring, which is what's

23  allowing this sale to happen, as well as the purchaser is

24  providing another $40,000 to the estate of direct cash to

25  help pay for counsel fees and other expenses.  So we do

Page 45

1    believe that there is a significant benefit to the estate

2    from all of this and that it has changed materially and

3    significantly since this morning.

4                    THE COURT:  Thank you.

5                    Mr. Shraiberg, how far will the $50,000 go

6    in terms of outstanding payroll?

7                    MR. SHRAIBERG:  So that number still

8    excludes management and certain salespeople.  So what is

9    the true payroll?

10                   UNIDENTIFIED SPEAKER:  Approximately, each

11   payroll, collectively between CLS and CD, is approximately

12   $140,000 per payroll.

13                   THE COURT:  Understood.  Thank you.

14                   UNIDENTIFIED SPEAKER:  And that would be in

15   full for all people, Judge.

16                   THE COURT:  I get it.

17                   UNIDENTIFIED SPEAKER:  And as you know,

18   earlier today, we are now five payrolls behind for CLS and

19   two for Clarity Diagnostics.

20                   THE COURT:  Understood.

21                   Ms. Feinman, does the proposed order address

22   your concern?

23                   MS. FEINMAN:  Your Honor, Heidi Feinman for

24   the U.S. Trustee.  I do appreciate that Brevet has

25   increased the amount of money.  It does make me feel a bit

Page 46

1    more comfortable with this proposal, Your Honor, and

2    especially the issue with the proof of claim also is being

3    resolved by filing the amended schedules.

4              I think the parties still want the order to

5    be final and non-appealable.  I think that if they make

6    the proffer and the Court agrees, then the U.S. trustee

7    will not oppose that.

8              THE COURT:  You're heading exactly in the

9    direction I expected, and I'll get to Mr. Berger and

10   Mr. Shraiberg on that in a moment.

11             I had some questions about the order, but is

12   there anything I should address before I ask those?

13             Anybody else wish to be heard?

14             (No audible response.)

15             THE COURT:  Okay.  It's a redline, so maybe

16   it's easier for me to refer to what I'm pointing to by the

17   paragraph letters and numbers.

18             All right.  So let me start with CC.  I

19   think this is a typo.  In the added language in CC, third

20   line from the bottom, it says, "Purchased Assets," but I

21   think you meant lender assets.

22             UNIDENTIFIED SPEAKER:  Yes, Your Honor, that

23   is a typo, likely from this (distorted audio).

24             THE COURT:  Right.  Let's see, I feel so

25   old-fashioned.  I have a pile of paper with little flags

Page 47

```
 1    on it, and people who know me well know I never have paper

 2    for anything.

 3                    Next item is on II, I think this is another

 4    typo.  Fourth from the bottom, it also says, "Specific

 5    Purchase Assets," and I think you mean lender assets.

 6                    UNIDENTIFIED SPEAKER:  Yes, Your Honor.

 7                    THE COURT:  KK on the next page.  Let me

 8    make sure I'm pointing to the right thing.

 9                    UNIDENTIFIED SPEAKER:  I think I see the

10    same issue on --

11                    THE COURT:  The fifth --

12                    UNIDENTIFIED SPEAKER:  -- five lines down.

13                    THE COURT:  Yep, correct.

14                    UNIDENTIFIED SPEAKER:  Yep.

15                    THE COURT:  Okay.  Now I get to the first

16    operative paragraph, number one, it says that the relief

17    requested in the sale motion and the transactions are

18    approved.  And you might want to add something that says

19    "As modified," because the relief request in the sale

20    motion is not identical to what's being approved.  And

21    that's fine.  But it makes it -- I would hate to have a

22    conflict between those two things.

23                    MR. SHRAIBERG:  Agreed, Your Honor.  We'll

24    make that change.

25                    THE COURT:  All right.  Paragraph 31, it's a
```

1   provision that says the parties can modify the agreement

2   so long as the estate is not affected.  The problem is --

3   let me just make sure I'm reading it correctly.

4                   No, I'm fine with that.  I read it -- I read

5   it incorrectly.

6                   And I think the only other flags I had were

7   to highlight the actual changes.  So that's fine.

8                   Any any questions?

9                   I don't think there's anything remarkable in

10  my comments.

11                  All right.  So, gentlemen -- and I guess I'm

12  referring to Mr. Shraiberg, Mr. Berger, how would you like

13  to address Ms. Fineman's concern via the offer of proof?

14                  It's the timing issue.

15                  MR. BERGER:  Yes, Judge.  This is Eyal

16  Berger again on behalf of the purchaser.

17                  My client representative is here and he

18  would proffer that if we were unable to close, basically,

19  next week, Judge, that we could not move forward with this

20  transaction, because, you know, currently -- because of

21  the payrolls that were missed, the likelihood and the risk

22  that the employees that would make this a going concern

23  will simply not be available, and that the value derived

24  from the going concern requires, you know, certain of

25  those employees to remain in place.

1          And so based on that, Mr. Bamberger would

2     proffer that we would not move forward if we had to wait

3     the full 14-day stay period with the proposed closing,

4     Judge.

5               THE COURT:  Understood.

6               Does anyone object to me asking -- excuse

7     me, accepting into evidence the proposed testimony of

8     Joseph Bamberger consistent with Mr. Berger's

9     presentation?

10              UNIDENTIFIED SPEAKER:  No, Your Honor.

11              THE COURT:  Does anybody wish to cross-

12    examine Mr. Bamberger?

13              (No audible response.)

14              THE COURT:  All right.  Thank you.  I think

15    that's sufficient to address the timing concern.

16              Are there any other offers of proof that you

17    believe would need to be made, Mr. Shraiberg, Mr. Berger

18    or Mr. Taylor?

19              MR. SHRAIBERG:  Your Honor, my presentation

20    this morning --

21              THE COURT:  Included some, yes.

22              MR. SHRAIBERG:  Correct, Your Honor.  And if

23    we can present my presentation as the proffer with regard

24    to any of the factual issues, Mr. Simpson would be the one

25    that would testify, and we would put him up for

1    cross-examination or make him available if anyone wanted

2    to so cross.

3                    THE COURT:  Thank you.

4                    Any objections?

5                    UNIDENTIFIED SPEAKER:  No, Your Honor.

6                    THE COURT:  Thank you.  I don't hear any.

7                    Does anybody wish to cross examine?

8                    (No audible response.)

9                    THE COURT:  All right.  Thank you.  That's

10   accepted.

11                   MR. SHRAIBERG:  Thank you.

12                   THE COURT:  Anything else, Mr. Berger or

13   Mr. Taylor?

14                   MR. SHRAIBERG:  Your Honor, one logistical

15   issue to formulate the smooth transition from the buyer to

16   the seller that we are going to need to enter into a

17   management agreement --

18                   THE COURT:  Yes.

19                   MR. SHRAIBERG:  -- and we will be filing an

20   emergency motion for approval to enter into such

21   agreement.  It's called for in the deal terms, but we felt

22   that it should be done via a separate motion.

23                   THE COURT:  Very good.  Of course, I saw

24   that.  Yeah.

25                   MR. SHRAIBERG:  Thank you.

1             THE COURT:  That's fine.  And if you need a

2    quick hearing, we can certainly accommodate.

3             And is there anything else we need to

4    address?

5             (No audible response.)

6             THE COURT:  Now, Mr. Shraiberg, at the

7    beginning of your presentation, you commented on the fact

8    that we had notice of an original motion that I set a

9    hearing on it, and then we had an amendment to that, but

10   we had already set a continued hearing.  And I want to

11   make it clear, as I said at the previous hearing, that to

12   the extent the transaction is improved in terms of its

13   overall benefit to the estate, that although you have

14   included proposed findings in this proposed order, which

15   are directed specifically at the current version of the

16   motion, in my view, we're carrying through from the

17   original version.  And the deal that you've presented to

18   the Court at this stage is a marked improvement from the

19   point of view of the estate, including the total amount of

20   funds that are likely to be received by the estate.

21            And so I would say that notice started with

22   the original motion and the first hearing.  And the

23   reality is, as a result of that, the only parties likely

24   to object and those who have lodged informal objections

25   are the ones present at this hearing.  So I would go one

Page 52

```
 1    step further than the findings that you made with regard
 2    to notice in this proposed order.  I would say that due
 3    process is well served under the circumstances.
 4                   I think that's all I would add.  I don't
 5    think you need to modify the order to address that unless
 6    you feel compelled to do so.
 7                   Is there anything else I need to address?
 8                   Because I believe that the order is very
 9    thorough, and I don't need to add anything further on the
10    record.
11                   MR. SHRAIBERG:  No, Your Honor, not with
12    regard to this motion as amended.
13                   THE COURT:  Mr. Berger?
14                   MR. BERGER:  No, Your Honor, not as
15    required -- as amended.  And we appreciate Your Honor's
16    time today.
17                   THE COURT:  Of course.
18                   Mr. Taylor?
19                   MR. TAYLOR:  Your Honor, the same for us.
20    We don't think that there's anything more to add.  The
21    order and the deal are the best for the estate and are
22    very comprehensive.  And we appreciate Your Honor's time
23    today.
24                   THE COURT:  Sure.
25                   Mr. Zinkler?
```

1                    MR. ZINKLER:  Nothing to add, Your Honor.

2    Thank you.

3                    THE COURT:  Thank you.

4                    Ms. Feinman?

5                    MS. FEINMAN:  No, Your Honor, other than to

6    thank you for your time.

7                    THE COURT:  Now, Ms. Feinman, in light of

8    the modifications, is there still an objection from the

9    U.S. trustee that is being overruled as a result of this

10   order?

11                   MS. FEINMAN:  Your Honor, it's either

12   overruled or we've reached an agreement to resolve it.

13   Whichever way the parties want to take it, I'm happy to

14   go.

15                   THE COURT:  It sounds like you've reached

16   agreement, but I just wanted to make sure, because I think

17   it was the only formal objection that I heard orally.

18                   MS. FEINMAN:  Yes.

19                   THE COURT:  Okay.  And I would overrule the

20   objection on the timing issue.  I was pretty confident

21   what I was going to hear from Mr. Berger, especially in

22   light of the extended period of time that employees have

23   been unpaid.  And so I would have overruled the objection

24   on the timing issue, and I think the proof of claim

25   concern has been addressed separately.

```
1                    MS. FEINMAN:  Yes, Your Honor.  And I just
2       wanted to proffer, Your Honor, so that --
3                    THE COURT:  Understood.
4                    MS. FEINMAN:  -- the Court could make that
5       ruling.
6                    THE COURT:  Absolutely.  Thank you.
7                    So the order will come from Mr. Shraiberg, I
8       take it?
9                    MR. SHRAIBERG:  Yes, Your Honor.
10                   THE COURT:  Okay.  Very good.
11                   Thank you all.  Have a good weekend.
12                   Oh, wait a minute, Ms. Leonard says stop.
13                   THE CLERK:  (Inaudible.)
14                   THE COURT:  Oh, we had all the other matters
15      that were on the calendar.
16                   Do I need to address some of those?
17                   MR. SHRAIBERG:  I do not believe so, Your
18      Honor.  And it may be cleaner to withdraw the various
19      additional motions, including the application to employ.
20      The lender and the purchaser are going to determine who is
21      best or most qualified to collect those receivables, and a
22      new motion will be filed.
23                   THE COURT:  All right.  Well, let me walk
24      through them just to make sure that we know from the
25      clerk's side what happens.
```

1              I would not withdraw the cash collateral

2    motion.  I just think we're not setting it for any further

3    hearing.  The last order entered on it is the last order

4    entered on it.

5              MR. SHRAIBERG:  Perfect.

6              THE COURT:  I suggest you withdraw 64, which

7    was the Crown Medical one.

8              Okay.  Motion to extend the exclusive

9    period, now moot.  You can withdraw that.  That's 158.

10             The joint motion to extend time to assume

11   leases, that should probably be granted.

12             MR. SHRAIBERG:  Yeah, I apologize.  That

13   one, we would go forward with.  And over the next, I

14   believe, 30 days, Mr. Berger's client is going to

15   determine which ones he wants to move forward --

16             THE COURT:  And this, by the way,

17   Mr. Berger, would extend the deadline through March 28th.

18             Are there any objections?

19             (No audible response.)

20             THE COURT:  All right.  So, please tender an

21   order granting 160, Mr. Shraiberg.

22             MR. SHRAIBERG:  Yes.

23             THE COURT:  Let me see if -- I think that's

24   everything.  That's everything.

25             All right.  Good.

Page 56

```
 1                    Thank you, Ms. Leonard.  I was about to make
 2  a quick exit again.  All right.
 3                    MR. BAMBERGER:  Your Honor, are liens lifted
 4  on the various assets?
 5                    THE COURT:  The order is very thorough on
 6  that, Mr. Bamberger.  Yes.  I have a funny feeling
 7  Mr. Berger had a lot to do with that.  He said it over and
 8  over again in every possible way.
 9                    Okay.  Very good.  Thank you.
10                    Anything else?
11                    UNIDENTIFIED SPEAKER:  I think that's it.
12                    THE COURT:  Thank you all.  Good luck.
13                    UNIDENTIFIED SPEAKER:  Thank you.
14                    THE COURT:  Court's adjourned.
15                    (Whereupon, the hearing was concluded.)
16
17
18
19
20
21
22
23
24
25
```

Page 57

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF BREVARD          :


          I, Anna M. Meagher, Shorthand Reporter, do

hereby certify that the foregoing proceedings were

transcribed by me from a digital recording held on the

date and from the place as stated in the caption hereto on

Page 1 to the best of my ability.

          WITNESS my hand this 18th day of June, 2025.


          _____

          ANNA M. MEAGHER,

          Shorthand Reporter